**ORR et al. v. CITY OF CUSHING et al.**

No. 8089—Opinion Filed Oct. 9, 1917.

(168 Pac. 223.)

**1. Appeal and Error—Petition in Error— Time for Filing.**

Under section 5266, Rev. Laws 1910, where the court allows an appeal from an an order dissolving a temporary injunction and makes an order extending the time in which to prepare and serve case-made, but does not designate in the order the time in which the appeal shall be filed in the Supreme Court, held, that the failure to designate the date upon which the appeal shall be filed in the Supreme Court within 30 days from the date of the order dissolving the injunction would not defeat the appeal, but would give the aggrieved party the full 30 days in which to file a petition in error in the Supreme Court.

**2. Municipal Corporations — Special Assessment—Jurisdiction—Statute.**

Under chapter 10, art. 3, Rev. Laws 1910, the passage and publication of the ordinance of necessity pursuant to section 468 of said act confers jurisdiction upon the municipal authorities of a city having a population of not less than 1,000 persons, to establish a sewer district and construct a district sewer therein, and to provide that the costs of such district sewer shall be apportioned against all the lots and the public highways, and to levy and assess a special tax by ordinance against each lot or piece of ground with the district to pay for the construction of such sewer.

**3. Same—Injunction—Irregularity of Proceedings.**

Where there is jurisdiction, the property owner who sees such improvements made with knowledge that the municipal authorities intend to levy and assess a special tax against his property, and that those who do the work can be compensated in no other way, and offers no objection until after the work has been done, cannot resort to a court of equity to enjoin such assessment upon the ground that the proceedings subsequent to the ordinance of necessity have not been regular.

**4. Same.**

Where jurisdiction has been obtained by the passage, approval, and publication of the ordinance of necessity creating a sewer district in a city having a population of more than 1,000 persons, and pursuant to such ordinance and contract thereunder the sewer improvements have been made and accepted and an ordinance passed levying an assessment in payment thereof, and certificates issued against such property for more than 60 days before the filing of the suit to enjoin the collection thereof, an injunction will not lie to review any irregularities in the proceedings of such city making such improvements, subsequent to the acquiring of such jurisdiction.

(Syllabus by West, C.)

Error from District Court, Payne County; A. H. Huston, Judge.

Suit for injunction by T. C. Orr and others against the City of Cushing and others. Temporary injunction dissolved, and plaintiffs bring error. Affirmed.

C. C. Suman and Everest & Campbell, for plaintiffs in error.

Thomas A. Higgins and Sylvester J. Berton, for defendants in error.

Opinion by WEST, C. This suit was originally filed in the district court of Payne county, Okla., on January 11, 1916, to enjoin the defendants from collecting, or attempting to collect, a levy and assessment or any part thereof in payment for a contract for the construction of lateral sewer district No. 20, within the limits of city of Cushing, and for an order to set aside, cancel, and declare void the tax warrants issued in part payment of said improvements, and to prohibit the further levying and assessing said property to pay for said sewer, and to prohibit the issuing of any further tax warrants in payment of same. Upon the filing of the petition and consideration thereof by the judge of the district court of said county a temporary injunction was

issued, and afterwards, on the 8th day of February, 1916, defendants filed a motion to dissolve said temporary injunction, and the same was heard at chambers in Guthrie, Logan county, on the 11th day of February, 1916, and upon consideration of the said motion the court dissolved said temporary injunction. From this action of the court plaintiffs in ° error, plaintiffs below, prosecute their appeal against defendants in error, defendants below, to review the action of the trial court in dissolving the injunction. All parties will be hereinafter referred to as in the lower court.

We are met at the outset with a motion on the part of defendants to dismiss this appeal on three grounds: First, because plaintiffs did not except to the order of the judge in chambers in dissolving the temporary injunction; second, that the court did not fix a time in which the petition in error should be filed in this court; third, that the court is without jurisdiction to hear the appeal.

As to the first ground of the motion to dismiss the injunction, the plaintiffs obtained leave in this court to withdraw the record and have same corrected so as to speak the truth and to show that the plaintiff did except to the order of the judge in chambers in dissolving ·the temporary injunction, and the trial judge by order nunc pro tunc has corrected the order dissolving the temporary injunction to show that the plaintiff had taken timely exception to the order, and the case-made has been accordingly corrected. Under section 5243, Rev. Laws 1910, the plaintiff had a right to withdraw said case-made and to have orders or records of the court below corrected to speak the truth. This having been done disposes of the first ground of motion to dismiss.

Second, that the court did not fix a time in which the petition in error should be filed in this court. Section 5266, Rev. Laws 1910, is as follows:

"5266. Review of Certain Orders. When an order, discharging or modifying an attachment or a temporary injunction, shall be made in any case, and the party who obtained such attachment or injunction shall except to such order, for the purpose of having the same reviewed in the Supreme Court upon petition in error, the court or judge granting said order shall, upon application of the proper party, fix the time, not exceeding thirty days from the discharge or modification of said attachment or injunction, within which such petition in error shall be filed. * * *"

Counsel in their behalf have cited a number of cases where the court sustained motions to dismiss the appeal from an order of the court below dissolving an attachment or temporary injunction, but in all of the cases cited it was where the appeal had been filed more than 30 days after the action on the order complained ·of. In the instant case the plaintiffs filed their appeal within the 30 days. Our court seems to have never passed upon this identical question. It appears from the statute above referred to that the court, on application by the proper party, is to fix the time, not exceeding 30 days from the discharge or modifying of said attachment or injunction, within which such petition in error shall be filed. Our courts have, in a number of cases, held that the court under the statute supra could shorten, but could not extend or enlarge, the time within which the petition in error could be filed in the Supreme Court. It is our belief that a reasonable construction of this statute upon the question involved in this case, that is, where the court allows an appeal and makes an order extending the time in which to prepare and serve case-made, but does not designate and set forth in the order the time in which the appeal shall be filed in the Supreme Court, would not defeat the appeal, but would give the aggrieved party the full 30 days in which to file a petition in error in the Supreme Court. It appears to us that there is a reason for this construction of the statute. It is provided that the court may fix the time in which the appeal shall be filed not to exceed 30 days. The courts have already construed this to mean that the court or judge may shorten the time for filing the appeal, but cannot extend or enlarge it beyond the 30 days. A condition might arise where a governmental function or a great industry or community was at a standstill, and was to be further tied up by an injunction. Upon appeal under the provisions of the statute supra, it would be within the power of the trial court, if it would determine that the public interest demanded it, to require the complaining party to lodge his appeal in the Supreme Court at a time less than 30 days, but if the court allows the appeal and extends the time for making and preparing case-made, and for suggesting amendments and selling the same, but does not prescribe in his order the time within which such appeal shall be filed in the court above, then it is our opinion that the aggrieved party would have the full 30 days in which to file his appeal in the Supreme Court. We therefore hold that the

motion to discuss the appeal should be overruled.

It appears in the instant case that upon the allowing of defendants' motion to dissolve the temporary injunction, the following stipulation was entered into:

"By Mr. Higgins: It is hereby stipulated and agreed between the parties hereto that the following are part of the facts: That Ordinance No. 210 was passed on the 13th day of February, 1915, creating sewer district No. 20, in the city of Cushing, Payne county, Okla., lateral sewer district No. 20, comprising lots 1 to 12, inclusive, block 1, lots 1 to 12 inclusive, block 2, and lots 1 to 12 inclusive in block 3, in the original town of the city of Cushing, Payne county, Okla., and that the same was duly and regularly published as provided by law, and that therefore, on the 22d day of February, 1915, said sewer district No. 20 was changed and amended by the addition of block 1, North addition to the city of Cushing thereto, as shown by Ordinance No. 214. duly and regularly passed by the council of said city and approved by the mayor on said date, which Ordinance No. 214 was duly and regularly published as provided by law. The lots added to the district being 13 to 24, inclusive, block 1, North addition to the city of Cushing, Payne county, Okla. That said change and amendment in said sewer district was ordered and made prior to the awarding of the contract for the construction of said improvement, and before the construction of said improvement.

"By Mr. Suman: We will admit that J. I. Hobbs was appointed engineer on February 15, 1915, for sewer district No. 20, by the council.

"By Mr. Higgins: It is further stipulated that thereafter, on the 23d day of March, 1915. J. I. Hobbs, engineer in charge of said work on sewer district No. 20, filed with the city clerk of said city plans, profiles, specifications, and estimate of the cost thereof as provided by law, and that said plans, profiles, specifications, and estimates were by the city council of the city of Cushing on said 23d day of March, 1915, duly approved. That thereafter, on the 24th day of March, 1915, E. W. Thiele, city clerk of the city of Cushing, Okla., gave and published notice to property owners and contractors calling for bids upon the construction of the sewer in sewer district No. 20, and that said notice contains the following provision: 'Any and all persons interested are hereby notified that they may appear and protest against or object to said proposed improvements or any part thereof or any matter or thing in relation thereto, at said meeting of the council on the 5th day of April, 1915.' That said notice contained this further proposition: 'Notice is hereby given that bids will be received at the office of the city clerk of the city of Cushing, Okla., until 5 o'clock p. m.

Monday, April 5, 1915, for the construction of lateral sanitary sewers in district No. 20 of said city, described as follows: District No. 20, comprising lots one to twelve, inclusive, block one; lots one to twelve, inclusive, block two; lots one to twelve inclusive, block three, original town of the city of Cushing, Oklahoma; lots 13 to 24 inclusive, block one, North addition to the city of Cushing. Plans, profiles and specifications of said sewers having been adopted by the mayor and council of the city of Cushing and are now on file in the office of the City Clerk.' And that said notice was published in the Cushing Citizen, a weekly newspaper printed and published in Payne county a sufficient length of time to publish legal publications for two consecutive issues, the first publication being March 25, 1915, and the last publication being April 1, 1915."

From this stipulation it appears that Ordinance No. 210, creating sewer district No. 20, was passed on the 15th day of February, 1915, and that Ordinance No. 214, amending said Ordinance No. 210, creating said district No. 20, was passed and published before the awarding of the contract. It further appears that on the 23d day of March, 1915, the city engineer filed with the clerk plans, profiles, specifications, and estimates for cost of construction of said sewer district, and on the 24th day of March the city clerk published notice to the property owners and contractors calling for bids for the construction of said sewer, and notifying all interested parties that they might appear and protest against said proposed improvements , or any part thereof, naming the date upon which they might appear as the 5th day of April, 1915, and providing that bids for the construction of the sewer in said district would be received on the 5th day of April, 1915, and that said notice was duly published. That on the 5th day of April, 1915, the contract to construct said sewer district No. 20 was awarded to W. F. Power, and that said contract price was less than the estimate furnished by the city engineer.

It further appears from the evidence that the said work in constructing said sewer in said sewer district was completed and reported to the council on May 1, 1915, by the city engineer, and that on the 3d day of May, 1915 that the mayor and council of the city of Cushing passed an ordinance, levying and assessing special taxes upon the lots of plaintiffs to pay for said improvements in said sewer district, and on the 20th day of September passed and approved Ordinance No. 266, to levy and assess the first installment of said assessment above made. Sections 465, 468, and 471, Rev. Laws 1910, are as follows:

"465.   District Sewers.   District sewers shall be established within the limits of the districts, to be prescribed by ordinance, and shall connect with public sewers . or other district sewers, or with the natural course of drainage, as each case may be. Such districts may be subdivided, enlarged or changed by ordinance at any time previous to the construction. of the sewer therein; and more than one district sewer may be laid in a sewer district if deemed necessary by the council for sanitary or other purposes. The council or board of trustees shall cause sewers to be constructed in each district whenever a majority of the property holders, residents therein, shall petition therefor, and said sewers shall be of such dimensions and materials as may be prescribed by ordinance and may be changed, enlarged or extended and shall have all the necessary laterals, inlets, catchbasins, manholes and other appurtenances: Provided, however, that the property owners shall have the right to construct the lateral sewers abutting their own property under the direction and supervision of the city engineer and at such time as the city engineer may prescribe. The cost of such district sewer shall be assessed and collected as hereinafter provided; but the city shall incur no liability for building district sewers, except when the city is the owner of a lot within the district, and in that case the city shall be liable for the costs of said sewer in the same manner as other property owners within the district."

"468. Letting Contract for District Sewers.

Whenever the mayor and council or the board of trustees shall deem any district sewer necessary, they may without the petition hereinbefore provided for proceed with such work and shall cause to be prepared sections, profits, and specifications for the work, together with a complete estimate of the costs. And the mayor and council or the board of trustees shall have the power to adopt any material or methods for the construction of such sewers and to have such plans prepared in accordance with its directions as to the kind of material used. Upon the completion of the plans and specifications and their adoption by the mayor and council or the board of trustees they shall advertise for sealed bids for the performance of such work, for at least ten days if published in a daily newspaper, or at least two weeks if published in a weekly newspaper, which paper shall be of general circulation in the city, and which notice may contain any reasonable conditions to be imposed by the mayor and council or the board of trustees with reference to the letting of such contract and may require the giving of a good and sufficient bond for the faithful execution of the work, and for the protection of the city and all property owners against any loss or damage by the negligent execution of such work. The notice shall also advise all parties interested that they may appear and protest against said proposed improvement, or any part thereof. At the time and place specified in the notice, the mayor and council or the board of trustees shall, if they find such improvement necessary and proper, award the contract to the lowest and best bidder for the work, which contract shall in no case exceed the aggregate estimate of costs submitted with the plans and specifications, and shall be subject to the right of the mayor and council or the board of trustees to reject any and all bids and to readvertise for other bids when none of the same are, in their judgment, satisfactory: Provided, that where a majority of the property owners in any block petition the mayor and council or the board of trustees for a lateral sewer through or in such block the advertising for bids shall not be necessary, but the mayor and council or the board of trustees may cause such improvement to be made without such notice."

"471. Action to Set Aside Assessment. No suit shall be sustained to set aside any assessment or certificate issued in pursuance of any assessment or to enjoin the city council or town board from making any improvement, unless brought within sixty days after the passage of the ordinance making such assessment: Provided, that in the event any special assessment shall be set aside or be invalid in whole or in part, the city council or town board may, at any time, in the manner herein provided for an original assessment, proceed to cause a new assessment to be made which shall have the like force and effect as an original assessment."

In the case of City of Perry et al. v. Davis et al., 18 Okla. 427, 90 Pac. 865, the first and second paragraphs of the syllabus are as follows:

"1. Under article 1, c. 6, of the Session Laws of 1903, entitled 'An act authorizing municipal corporations to extend or build general sewer systems and to levy special assessments of taxes to pay for same,' the mayor and city council are authorized to establish a general sewer system and proceed with the construction of district sewers when deemed necessary, without a petition by a majority of the resident property holders residing in the sewer district.

"2. Article 1, c. 6, of the Session Laws of 1903, under which the tax for the construction of the sewer in this case was levied is not unconstitutional by reason of the fact that it fails to provide for notice of the construction of the sewer to property holders, other than the notice imparted by the passing of the ordinance and other proceedings designated in the act and to give them an opportunity to be heard, before the construction of said sewer."

In case of City of Muskogee et al. v. Rambo et al., 40 Okla. 672, 138 Pac. 567, first and second paragraphs of the syllabus are as follows:

"1. Under chapter 15, art. 15, Comp. Laws 1909, the passage and publication of the ordinance, of necessity, pursuant to section 989 of said act, confers jurisdiction upon the municipal authorities of cities having a population of not less than 1,000 persons to establish a sewer district and construct a district sewer therein, and to provide that the cost of such district sewer shall be apportioned against all the lots or pieces of ground in such district, exclusive of the public highways, and to levy and assess a special tax by ordinance against each lot or piece of ground within the district to pay for the construction of such sewer.

"2. Where there is jurisdiction, the property owner who sees such improvement made with knowledge that the municipal authorities intend to levy and assess a special tax against his property, and that those who do the work can be compensated in no other way, and offers no objection until after the work has been done, cannot resort to a court of equity to enjoin such assessments upon the ground that the proceedings subsequent to the ordinance of necessity have not been regular."

In the body of the opinion, the court, speaking through Mr. Justice Kane, uses the following language:

"On the question of what constitutes jurisdictional facts, the court seems to be in irreconcilable disagreement. We venture to suggest, however, that in some of the cases where, as in this case, the attack was collateral, the courts have erred in pronouncing the proceedings absolutely void, and that in others, where the attack was direct, they erred in doing more than declaring the proceedings to be erroneous. The true rule, we take it, is that if the proceedings are entirely without or beyond the authority of the tribunal, they are absolutely void; but where they are not entirely beyond the scope of jurisdiction of the tribunal, they are simply voidable. 1 Elliot, Roads & Streets (3d Ed.) § 607; Bartlesville v. Holm et al. [40 Okla. 467, 139 Pac. 273], supra. There seems to be no doubt that the ordinance declaring the necessity for a sewer district passed by the authorities of the city of Muskogee, in pursuance of section 989, supra prescribed the limits of the district as provided for by section 986 of the same act, and that the same was published as required by law. It is admitted that, notwithstanding the passage and publication of the ordinance of necessity, the title and substance of which have been hereinabove set out, and the other facts which tended to appraise the property owners of the fact that extensive public improvements tending to benefit their property were contemplated, which the municipal authorities intended should be paid for by special assessments against their property for benefits, the work of constructing the sewer progressed for approximately three months, during which time it was practically completed, before the property owners were aroused to contest the right of the city and the contractor to have the property benefited taxed to pay for the improvement.

"Counsel for the property owners say, however, that: 'The sewer law of Oklahoma does not provide an opportunity for protest, and no matter if every property owner in the district had protested against the building of the sewer, either before or after the contractor had begun work, their protest would have availed them nothing.' In City of Perry v. Davis et al., supra, Mr. Justice Garber, who delivered the opinion for the court, on the question of notice, said: 'Thus we see that the property owners of sewer district No. 1 in the city of Perry were notified: First, by the publication of the ordinance creating the district, stating that it was deemed necessary for sanitary purposes, and that a sewer would be constructed therein according to certain regulations set out in the ordinance; second, by the publication for ten consecutive days in a newspaper of general circulation in the city of Perry of the notice for bids for the construction of the sewer; third, the publication for four consecutive weeks of ordinance levying and assessing the tax. Sufficient notice was therefore given to the defendants in error in this case, who were all residents of the city of Perry, affording them opportunity to protect their rights before the tax levied became a fixed charge or lien against their property.'

"The same may be said of the property owners who are parties to the instant suit. In speaking of the remedies available to the property owners, and their duty to pursue the same promptly upon receiving notice, the learned justice said: 'It was the plain duty of the defendants in error, upon the publication of the ordinance creating the sewer district, or when they learned that labor and money were being expended in the actual construction of the sewer, to vigorously oppose and protest against it; then was an opportune time to test, by injunction or other proceedings, the legality of the various steps being taken.'

"It was under the same statute construed in that case that the improvement herein involved was construed. Indeed practically all the sewer systems in all the cities in this state were constructed under the same act, and the construction placed thereon in City of Perry v. Davis et al., supra, has been accepted as final by the bench and bar of Oklahoma, as a territory and as a state, for a great many years. Under the construction placed upon the act, the publication of the ordinance, of necessity, has been deemed sufficient notice to the property owners of all the facts therein contained, and injunction or other proceedings in the ordinary courts of general jurisdiction have been deemed to be their remedy if they have any

complaints or objections to make to the validity of the proceedings under which the publication for the improvement is made. Neither the act itself nor the decision of the courts fixes any specific time within which complaints or objections may be filed. But the decision unquestionably holds that the act under which the improvement was made constitutes due process of law; that the passage and publication of the ordinance, of necessity in pursuance of the act, constitutes notice and confers jurisdiction upon the city authorities to perform the work and provide for the payment thereof; that it was the duty of the property owners, upon the publication of the ordinance creating the sewer district, or upon discovering that labor and money were about to be expended in the actual construction of a public work, which would tend to benefit their property, to promptly take action, by injunction or otherwise, against the proceedings providing for such improvements, if in their judgment they are irregular. Under the rule therein laid down, the property owners cannot stand by without objection or protest while the public work is in progress, and when the entire work is completed and they are called upon to pay their respective assessments for the benefits received, then invoke relief by injunction in a court of equity. Other cases to the same effect are: Lumber Co. v. Muskegon, 152 Mich. 59, 115 N. W. 957; Townsend v. Manistee, 88 Mich. 408, 50 N. W. 321; Elkhart v. Wickwire, 121 Ind. 331, 22 N. E. 342; Collins v. Holyoke, 146 Mass. 298, 15 N. E. 908; Paulson v. Portland, 16 Or. 450, 19 Pac. 450, 1 L. R. A. 673; Pittsburg, etc., R. Co. v. Fish, 158 Ind. 525, 63 N. E. 454; Spaulding v. Baxter, 25 Ind. App. 485, 58 N. E. 551."

It would therefore appear from the authorities above quoted that under the pleadings in this case and stipulations entered into by the parties the defendant, the city of Cushing, performed all necessary steps to acquire jurisdiction to make the improvements complained of, and that the most that can be said in support of the contention urged by the plaintiffs is that the proceedings were to some extent irregular, but, inasmuch as the jurisdiction was acquired to make these improvements, and that they were made, and that the bill of plaintiffs was not filed until more than 60 days after the certificates were issued in pursuance of said assessment, that this court under the authorities hereinbefore quoted will not review the irregularities urged.

The order of the trial judge, dissolving the temporary injunction, is therefore affirmed.

By the Court: It is so ordered.