**CROSSLIN et al. v. WARNER-QUINLAN ASPHALT CO. et al.**

No. 8792—Opinion Filed Dec. 31, 1918.

(177 Pac. 376.)

(Syllabus.)

1. **Municipal Corporations—Street Improvement—Resolution — Time for Remonstrance.**

The mayor and council of a city of the first class were not deprived of jurisdiction to proceed with the improvement of a street of the city for which a special tax was to be levied under chapter 10, art. 1, Sess. Laws 1907-08, p. 166, under a resolution duly published declaring such improvement necessary, by protest in writing by the owners of more than one-half in area of the land liable to assessment, unless such written protest was filed with the clerk of said city within 15 days after the last publication of such resolution.

2. **Same — City Clerk — Journal Entries— Improvement Proceedings—Statute.**

Section 822, Comp. Laws 1909 (section 553, Rev. Laws 1910), and section 824, Comp. L. 1909 (section 554, Rev. Laws 1910), requiring the city clerk to keep a journal in which shall be recorded all proceedings of the city council, and to enter on the journal the vote on the final passage of ordinances taken by yeas and nays, are directory; and the failure of the city clerk to record upon his journal the proceedings of the council had in passing an ordinance levying a special assessment on lots and tracts of land abutting on a street, to pay for the improvement of same, and to record on the journal the action of the mayor and council appointing a time for holding a session by them to hear complaints and objections concerning the appraisement and apportionment, as reported by the appraisers, does not invalidate such ordinance or action of the mayor and council.

3. **Same — Vacation of Assessment — Grounds.**

That a city paid a paving contractor more than the amount provided in his contract, if illegal at all, is an irregularity and not a jurisdictional defect; and a suit cannot be maintained to set aside an assessment on the ground that the amount includes such excessive payment, when commenced more than 60 days after the passage of the ordinance making the final assessment. Section 7, art. 1, c. 10, Sess. Laws 1907-08, p. 176 (section 644, Rev. Laws 1910).

Error from District Court, Garfield County; James B. Cullison, Judge.

Action for injunction by W. E. Crosslin and others against the Warner-Quinlan Asphalt Company and others, in which the First National Bank of Cleveland was joined as a defendant. Judgment for defendants, and plaintiffs bring error. Affirmed.

John C. Moore, for plaintiffs in error.

McKeever & Moore, for defendants in error.

MILEY, J. This action was commenced on the 9th day of December, 1914, by the plaintiff in error Wm. E. Crosslin, as plaintiff in the court below, against the defendants in error, except the First National Bank of Cleveland, as defendants therein, to enjoin the collection of a certain special assessment levied pursuant to chapter 10, S. L. 1907-08, p. 166, as amended by article 1, c. 7, S. L. 1909, p. 131, against a lot or parcel of land belonging to him, fronting and abutting on East Main street in the city of Enid, Okla., to pay the cost of the improvement of said street. The other plaintiffs in error, being severally the owners of other lots and pieces of land abutting on said street, were from time to time by leave of court permitted to join in the action as plaintiffs. The First National Bank of Cleveland, being the owner of the street improvement bonds issued by the city and payable solely from the assessments levied upon the lots and tracts of land benefited by said improvement, joined as defendant in the court below. After issue joined, there was a trial to the court, resulting in decision and final judgment in favor of the defendants, from which the plaintiffs below prosecute error to this court. The validity of the assessment was assailed by the plaintiffs in error in the court below upon

many grounds, some of which are not urged in this court.

Of the questions raised and argued here, the first which we shall notice is that the city did not acquire jurisdiction to improve the street to be paid for by special assessments against the lots and tracts of land abutting thereon and benefited thereby. Section 2 of the act provides:

"When the mayor and council shall deem it necessary to grade, pave, macadamize, gutter, curb, drain or otherwise improve any street, avenue, alley, or lane, or any part thereof, within the limits of the city for which a special tax is to be levied as herein provided said mayor and council shall, by resolution, declare such work or improvement necessary to be done, and such resolution shall be published in six consecutive issues of a daily newspaper, or two consecutive issues of a weekly newspaper published and having a general circulation within such city; and if the owners of more than one-half in area of the land liable to assessment to pay for such improvement of any such highway shall not, within fifteen days after the last publication of such resolution, file with the clerk of said city their protest in writing against such improvement, then the mayor and council shall have power to cause such improvement to be made and to contract therefor and to levy assessments as herein provided. * * *"

It appears from the record that on December 11, 1908, the resolution of necessity to grade, pave, curb, gutter, and drain and otherwise improve Main street from the east line of Third street to the east line of Twelfth street, in the city of Enid, was regularly passed by the council and approved by the mayor. It further appears that this resolution was published in the Enid Daily Eagle, a daily newspaper published and having general circulation within that city, for six regular consecutive issues exclusive of Sundays and holidays, and due proof was made thereof; the first publication being made of the 22d day of December, 1908, and the last on the 29th day of December, 1908.

It seems that the plaintiffs in error do not now question the sufficiency of the resolution so passed, or the publication thereof. It is their claim, however, that the owners of more than one-half in area of the land liable to assessment to pay for such improvement filed a protest in writing against the same. While by section 4 of the act it is provided that after the expiration of the time for objection or protest of the property owners, if no sufficient protest be filed, the mayor and council shall adopt a resolution reciting that no such protest has been filed and expressing the determination of the council to proceed with the improvement. etc., and a resolution was passed by the said council of the city of Enid on September, 17, 1909, reciting that no protests against the improvement had been filed, which was published on the 21st and 28th days of October, 1909, in the Enid Events, a weekly newspaper of general circulation in that city, yet it seems that such finding by the council is not conclusive and may be attacked collaterally. Berry v. City of Stillwater, 49 Okla. 560, 153 Pac. 870.

Much of the testimony at the trial was directed to the question of whether a protest had been filed. The original, if any, filed with the city clerk, was not produced, and it was contended by the plaintiffs that the same had been lost or made away with, We have examined all of the evidence with care. and, while there is considerable evidence tending to show that two or more protests were circulated and signed by various owners of property abutting on the proposed improvement some time between the publication of the initial resolution and the letting of the contract. one witness fixing the time when he circulated the protest as being in the last days of December, 1908, and the early days of January, 1909, and while there is some evidence tending to show that a meeting was held by the city council, at which many of the protestants were present and their protests considered, yet we have been unable to find, and counsel for plaintiffs in error in their brief fail to call attention to any evidence tending to show that a sufficient protest. or indeed that any protest at all, was filed within 15 days after the last publication of the resolution. On the other hand, a protest signed by property owners against the improvement of a part of the street here involved and other streets, directed against a prior resolution of necessity passed June 21, 1907, was produced at the trial, and there is evidence which tends to show that this is the protest which the witnesses for plaintiffs had in mind and that no protest was circulated and filed under the resolution of December 11, 1908. Manifestly, the council was not deprived of jurisdiction to proceed with the contemplated improvement by a protest filed more than 15 days after the last publication of the resolution, or one previously filed and directed to a prior resolution. Having found generally for the defendants. the trial court necessarily found that a time.

ly or sufficient protest was not filed by the property owners and on the state of the record, we cannot disturb the same.

The next contention of the plaintiffs in error is that the assessment is invalid for the reason that the journal kept by the city clerk does not show the final passage of the assessing ordinance, as required by section 822, Comp. L. 1909, section 553, R. L. 1910. The ordinance in question appears in the ordinance book kept by the city clerk pursuant to section 823. Comp. L. 1909, section 555, R. L. 1910, with a note appended thereto stating that it was passed June 13, 1910. This ordinance was numbered No. 721. Reference to the journal kept by the city clerk of the proceedings of the council of that date shows that an ordinance of that number was considered and regularly passed by the council; but at one place, in the journal of the proceedings of the council from which the jour is recited to be, "an ordinance defining cruelty to animals, providing penalties for violation thereof," etc. An ordinance bearing this title appears in the ordinance book as No. 721½, which appears to have been passed on June 20, 1910. The city clerk at the time testified that he kept memoranda of the proceedings the title of the ordinance as read nals were subsequently written up by an assistant, and that originally the ordinance defining cruelty to animals, through oversight, was given the number 721, the same as the assessing ordinance, and that, in writing up the journals of the meeting of June 13th, his assistant mistook his reference to ordinance No. 721 in his memorandum made at the time for the ordinance defining cruelty to animals, while the proceeding was actually had with reference to the ordinance levying the assessment. The plaintiffs in error insist that, notwithstanding this explanation, the journal fails to disclose that the assessing ordinance was read and considered by sections at a public meeting of the council, and the vote on its final passage by yeas and nays, and that for this reason the ordinance is void. With this contention we do not agree. If it should be assumed that the clerk had failed to enter on the journal the yea and nay vote on the final passage of the ordinance, such failure would not invalidate the same. Section 822, Comp L. 1909, being section 553, R. L. 1910, and section 824, Comp. L. 1909, being section 554. R. L. 1910, making it the duty of the clerk to keep the journal and to enter therein the yea and nay vote on the final passage of ordinances, are directory, and the failure of the city clerk so to do does not invalidate such ordinance.

Marth v. City of Kingfisher, 22 Okla. 602, 98 Pac. 436, 18 L. R. A. (N. S.) 1238; Rogers, Co. Treas., v. Bass & Harbour Co., 64 Okla. 321, 168 Pac. 212. After an examination of the entire record, we are satisfied that the finding of the trial court that a majority of the members of the city council voted in favor of the ordinance, and that the same was legally adopted and approved, is supported by the weight of the evidence.

It is further contended by the plaintiffs in error that the contract price exceeds the estimate of cost submitted by the engineer with the plans and specifications, and that the contract is therefore void and the assessment to pay the contract price is invalid. It appears from the record that an estimate of costs was submitted by the engineer with the plans and specifications, and that due advertisement was made for bids to furnish the material and perform the work in accordance with such plans and specifications. The cost as estimated by the engineer was $51,019 80. The Warner-Quinlan Asphalt Company submitted a bid of $49,152.87, and the contract was awarded to them for that sum as the lowest and best bidder. It does not appear that that portion of section 4 of the act, providing that the "contract shall in no case exceed the estimate of the cost submitted by the engineer with the plans and specifications," was violated, and hence the holding in Morrow v. Barber Asphalt Paving Co., 27 Okla. 247, 111 Pac. 198, has no application.

It is further contended by plaintiffs in error that the assessment is invalid because the mayor and council at no time appointed a time for holding a session on a day fixed by them to hear any complaints or objections that might be made concerning the appraisement and apportionment of the cost of the improvement to these lots or tracts of land abutting thereon. It is provided in section 5 of the act that—

"When said report (of the appraisers) shall have been so returned, the mayor and council shall appoint a time for holding a session on some day to be fixed by them to hear any complaints or objections that may be made concerning the appraisement and apportionment as to any of such lots or tracts of land, and notice of such session shall be published by the city clerk in five successive issues of a daily newspaper, or two issues of a weekly newspaper published and of general circulation in said city, and the time fixed for said hearing shall be not less than five nor more than ten days from the last publication."

A proper notice of a meeting to hear complaints and objections to the appraisement and apportionment to be held on the 2d day of June, 1910, at 10 o'clock a. m., was duly published in the Enid Eagle, a daily newspaper published and in general circulation in said city for six consecutive issues; the first publication being on the 19th day of May, 1910, and the last on the 25th day of May, 1910. The journals kept by the city clerk show that a meeting was held on the date mentioned in the notice, and that at a subsequent meeting, held on June 10th, a formal resolution was passed confirming the report of the appraisers. For reasons already stated, the fact that the journals do not show that the mayor and council themselves fixed the time of the meeting is not fatal. The trial court was evidently satisfied that the time for holding the session was regularly fixed, and we cannot say that same is against the weight of the evidence.

The next contention of the plaintiffs in error is that the total assessment is excessive, and includes improper items. As stated before the contract price for the improvement was $49,152.87, which appears to have been for a pavement 35 feet wide; subsequently, the width of the pavement was increased 40 feet. The resolution appointing appraisers recites that the cost of the improvement, including all expenses incident thereto, in addition to the contract price, had been definitely ascertained and fixed in the sum of $56,705.25, which was the total amount assessed against the property abutting on the improvement. Plaintiffs in error contend that this excess of $7,553.38 of the total cost over the contract price was to pay for the extra width of 5 feet, and that the assessment therefore was illegal. It has been impossible for us to determine from the record what items are included in this amount of $7,553.38. By section 5 of the act, the assessment is authorized, not only for the contract price of the work and materials, but for the entire cost of the improvement which shall include all other expenses incurred by the city incident to said improvements. in addition to the contract price. We are unable to say from an examination of the record that any illegal or improper items were included in the amount assessed. But, in any event, this action having been commenced more than 60 days after the passage of the ordinance making the final assessment. the validity of the same cannot be questioned on the ground that the city paid the contractor more than the amount provided in the contract and included the same in the assessment. Section 7, c. 10, Sess. Laws 1907-08, p. 176; section 644, Rev. Laws 1910. Such would be an irregularity and not a jurisdictional defect. Shultz v. Ritterbusch, 38 Okla. 478, 134 Pac. 961; Grier v. Kramer, 62 Okla. 151, 162 Pac. 490.

We have considered all other contentions of the plaintiffs in error and find no merit therein.

The judgment of the trial court is affirmed.

All the Justices concur, except TURNER and BRETT. JJ., absent and not participating.