Note.—See under (1) 29 C. J. p. 885 § 259; anno. 9 L. R. A. (N. S.) 565; 36 L. R. A. (N. S.) 1024; L. R. A. 1915D, 551; 13 R. C. L. p. 622 et seq.; 3 R. C. L. Supp. p. 66; 4 R. C. L. Supp. p. 824; 5 R. C. L. Supp. p. 704. (2) 29 C. J. p. 885 § 259; anno. 36 L. R. A. (N. S.) 1029; 13 R. C. L. p. 627. (3) 29 C. J. p. 783 § 3; p. 885 §259; anno. 36 L. R. A. (N. S.) 1029; 13 R. C. L. p. 627. (4) 12 C. J. pp. 961 § 502; 967 § 526; 29 C. J. p. 885 § 258. (5) 12 C. J. p. 957 § 486 (Anno). (6) 29 C. J. p. 927 § 337 (Anno).

---

**EDMONDS et al. v. TOWN OF HASKELL et al.**

No. 15937—Opinion Filed March 30, 1926.

Rehearing Denied May 11, 1926.

(Syllabus.)

**1. Statutes—Subjects and Titles—Constitutional Provision.**

Section 57, art. 5, of the Constitution provides, among other things, as follows: "Every act of the Legislature shall embrace but one subject, which shall be clearly expressed in its title; * * * and no law shall be revived, amended, or the provisions thereof extended or conferred, by reference to its title only."

**2. Same—Municipal Corporations — Constitutionality of Act Authorizing Towns to Improve Streets and Levy Special Assessments.**

Chapter 176, S. L. 1919, is an original act, the title of which is as follows:

"An act providing for the establishing and changing of the grade of any street, avenue, land, alley or other public place in any incorporated town in the state of Oklahoma, having a population of more than 1,000, as shown by the last federal census, or any special census taken for that purpose, and for permanently improving the same by paving, macadamizing, curbing, guttering and draining the same, including the installation of manholes, sewers, and catch-basins; providing for paying for said improvements, and declaring an emergency."

Sections 1 and 2 of said act confer upon towns having a population of more than 1,-000. authority to pave streets and to levy assessments against abutting property for the payment of such improvements, and provide that such authority shall be exercised under and in conformity with the provisions of article 12, chap. 10, R. L. 1910 (now art.

12, chap. 28, C. S. 1921). Held, that said chapter 176 is not violative of said section 57, art. 5, of the Constitution.

Neither is said chapter 176 violative of section 1, art. 18, nor of sections 46 and 59, art. 5, of the Constitution, for the reason that said section 1, art. 18, expressly provides that the Legislature shall provide for the incorporation and organization of cities and towns and the classification of same in proportion to population; and section 7, art. 10, of the Constitution provides that the Legislature may authorize county and municipal corporations to levy and collect assessments for local improvements upon property benefited thereby, homesteads included, without regard to cash value.

**3. Municipal Corporations — Constitutionality of Paving Law.**

Article 12, chap. 10, R. L. 1910, is a part of chapter 10, S. L. 1907-8, as amended by chapter 7, S. L. 1909, the provisions of which have been construed and held valid by numerous decisions of this court and are not violative of section 26, art. 10, nor of section 7, art. 2, of the Constitution of Oklahoma, nor of the 5th and 14th Amendments to the Constitution of the United States.

**4. Same—Engineer's Specifications and Estimates for Improvement—Sufficiency.**

The fact that a town may have no official resident engineer and may employ a nonresident engineer to make the estimate required to be made by section 615, R. L. 1910 (now sec. 4590, C. S. 1921), does not of itself, in the absence of fraud, invalidate the assessments.

The jurisdictional feature of the statutory requirement for an estimate does not consist in the official character of the engineer who makes the estimate, but the purpose of such requirement is to furnish the governing officers of a city or town with a character of information which requires skilled persons to furnish, a class of information which only skilled persons can furnish, and upon which the officers, having power to make improvements, may safely rely.

Any estimate sufficient to inform and satisfy such officers as to what the character and quality of the improvements will be after completed and what they will cost, such estimate, i. approved by such officers, and filed as required, is, in the absence of fraud, sufficient under the law.

**5. Same—Suit to Prevent Improvement or Collection of Assessment—Limitation of Action.**

Section 644, R. L. 1910, now sec. 4619, C. S. 1921, provides that no suit shall be sustained to set aside any assessment or to enjoin the making of any improvement, or the levying or collecting of any assessment, unless such suit shall be commenced not more

than 60 days after the passage of the ordinance making a final assessment.

This section has been construed and held to mean what it says in numerous decisions from this court, hence a proceeding begun after the expiration of more than 60 days after the date of final assessment cannot, in the absence of fraud, be maintained.

### 6. Same—Paving Proceedings Sustained.

Record of the proceedings pertaining to the improvements herein examined and held to constitute a substantial compliance with the statute.

Appeal from District Court, Muskogee County; John L. Norman, Assigned Judge.

Action by D. Edmonds and others against the Town of Haskell and others. Judgment for defendants, and plaintiffs appeal. Affirmed.

Crump & Seawel, for plaintiffs in error.

Cochran & Ellison, G. A. Paul, A. Gray Gilmer, and Allen & Underwood, for defendants in error.

HARRISON, J. This proceeding was originally instituted to enjoin the collection of certain assessments levied by the town of Haskell for street paving and has been before this court in a former appeal.

The alleged right to the relief sought was based upon the contention that chapter 176, S. L. 1919, under which the paving in question was done, is unconstitutional.

The title of the act in question is as follows:

"An act providing for the establishing and changing of the grade of any street, avenue, land, alley or other public place in any incorporated town in the state of Oklahoma, having a population of more than 1,000, as shown by the last federal census or any special census taken for that purpose, and for permanently improving the same by paving, macadamizing, curbing, guttering and draining the same, including the installation of manholes, sewers, and catch-basins; providing for paying for said improvements, and declaring an emergency."

Section 1 of the act is as follows:

"That all of the provisions of article 12 of chapter 10, of the Revised Laws of Oklahoma, 1910, are hereby made applicable to, and may be used for the purpose of establishing and changing the grade of any street, avenue, land, alley or other public place in any incorporated town having a population of more than one thousand (1,000) as shown by the last federal census, or any special census taken for that purpose and for permanently improving the same by paving, macadamizing, curbing, guttering and draining the same, including the installation of all manholes, sewers, and catch-basins, and providing for paying for said improvements."

Section 2 thereof is as follows:

"All incorporated towns in the state of Oklahoma, having a population of more than one thousand (1,000) as shown by the last federal census, or any special census taken for that purpose, may proceed under all the provisions of said article 12 of chapter 10, of the Revised Laws of Oklahoma, 1910, and make assessments thereunder for the purpose of paying for the improvements provided for in section 1 of this act, and may issue bonds as provided for in said article, and in all things necessary for the improvement and paving, curbing, guttering and draining of any street, avenue, land, alley or other public place in said town, proceed under any and all the provisions of said article 12."

Section 3 is the emergency clause.

In the former appeal, which was cause No. 12841 in this court, the trial court had sustained the contention of plaintiffs, held the statute in question unconstitutional and granted an injunction against collection of the assessments. The defendant, town of Haskell, appealed to this court, and in an opinion which became final May 29, 1923, this court held said statute to be valid and reversed and remanded the judgment of the district court for further proceedings not inconsistent with the views expressed. See 90 Okla. 44, 215 Pac. 629. Pursuant thereto, further proceedings were had below, at the conclusion of which and in conformity with the views expressed in said opinion, judgment was rendered in favor of defendant below, town of Haskell, and plaintiffs have appealed from such judgment.

The identical subject-matter involved in the former appeal is now before the court in this appeal, but some additional contentions, not specifically urged in the former appeal, are now presented in this appeal. There is a controversy also as to just what questions were passed upon in the former opinion, and perhaps several hundred pages of the briefs, including copious notes and quotations, are devoted to such controversy. In order to economize, both in time and space, this being a proceeding in which all towns of the class included in the act are interested, we will pass upon such additional contentions, rather than to determine the controversy as to just what was passed upon and what questions were presumably included in the former opinion.

In said opinion, however, one question at least was specifically urged and conceded to have been definitely passed upon, viz., the question whether said chapter 176 is viola-

tive of section 57, art. 5, of the Constitution, which, among other things, provides that no law shall be revived, amended, or the provisions thereof extended or conferred by reference to its title only. In said former opinion it was specifically held that said chapter 176 is not within said constitutional inhibition and is valid. We still concur in such conclusion, that said chapter 176 is not violative of section 57, art. 5, of the Constitution, for the reasons given in the former opinion, and for the further reason that the only express limitation in such provision is that no law shall be extended, etc., by reference to its title only, that is, by only referring to its title. The limitation goes no further than merely to prohibit the extension, etc., of a statute by reference to its title only, that is, by reference only to its title. The act in question makes no reference whatever to the title of the act which it puts in force. It is clear, from both the title and the provisions of said chapter 176, that the Legislature did not intend nor attempt to extend the provisions of article 12, chap. 10, R. L. 1910 (now art. 12, chap. 29, C. S. 1921), by reference to its title only, and does not refer to the title at all. Said article 12, chap. 10, supra, was a part of chapter 10 of the Acts of 1907-8, as amended by chapter 7, S. L. 1909, and chapter 176, S. L. 1919, makes no reference whatever to the title of said Acts of 1907-8, nor to the title of the Act of 1909; it cannot be said to have given towns of more than 1,000 inhabitants the privileges of said Act, which are now article 12, chap. 29, C. S. 1921, by reference merely to the title of said Acts of 1907-8. Said chapter 176 is an act original and complete in itself. The Legislature had a definite purpose in view, viz., the purpose of supplementing said article 12, chap. 10, by giving to towns of more than 1,000 inhabitants the privilege, when they chose to avail themselves of it, of paving their streets. The title of the act clearly discloses such purpose, and the provisions of sections 1 and 2 thereof show clearly just how such purpose may be carried out, just how such towns may avail themselves of the privilege thus conferred. The title of the act is sufficiently explicit to give full notice as to just what the Legislature intended to do, and the provisions of the act are equally clear as to just how such intentions may be put in force, just how the inhabitants of such towns may avail themselves of the privileges thus conferred. There is no confusion nor ambiguity, nothing misleading, in either the title or the provisions of the act, no reason why any one should be misled as to the intent of the Legislature, nor as to the privilege which the Legislature conferred by the

act. The provisions of the act, construed in the light of its title, are not only free of repugnancy to the constitutional provision in question, but constitute a clearly substantial compliance therewith. Besides, it is a rightful subject of legislation. There is no reason, at least it is not for the courts to say there is a reason, why towns of more than 1,000 inhabitants should not have authority to pave their streets, if they desire to do so, and the act in question merely gives them such authority.

This is the only constitutional question presented herein which, under the circumstances of this case, could be material to, or affect the constitutionality of said chapter 176. The contention that said chapter 176 is local and special and violative of section 1, art. 18, and of sections 46 and 59, art. 5, of the Constitution, is without merit, for the reason that said section 1, art. 18, expressly provides that:

"The Legislature, by general laws, shall provide for the incorporation and organization of cities and towns and the classification of same in proportion to population. * * *"

The act in question cannot be said to be more than a reasonable and fair classification of towns in proportion to their population, and a grant of the same privileges to all towns of the same class.

As to legislative authority to grant the privilege granted by the act in question, section 7, art. 10, of the Constitution provides that:

"The Legislature may authorize county and municipal corporations to levy and collect assessments for local improvements upon property benefited thereby, homesteads included, without regard to a cash valuation."

These two sections of the Constitution expressly authorize the Legislature to do just what it has done in said chapter 176.

All other constitutional objections, viz., that said chapter is violative of section 26, art. 10 and section 7, art. 2, of the Constitution of Oklahoma, and of the 5th and 14th Amendments to the Constitution of the United States, go to the validity of the provisions of said article 12, chap. 10, which were extended by the act in question, and not to the validity of the act itself. In other words, all other constitutional objections urged go to the validity of the provisions which were extended, and not to the validity of the act which extended them. The provisions of article 12, chap. 10 (now art. 12, chap. 29, C. S. 1921), have been construed and held valid in numerous cases decided by

this court. Oklahoma City v. Shields, 22 Okla. 265, 100 Pac. 559; Edwards v. Thrash, 26 Okla. 472, 109 Pac. 832; followed in McAlester v. McMurray, 26 Okla. 517, 109 Pac. 838; Alley v. City of Muskogee, 53 Okla. 230, 156 Pac. 315; Shultise v. Town of Taloga. 42 Okla. 65, 140 Pac. 1190; see, also, cases cited in the various sections in article 12, chap. 29, C. S. 1921.

Our laws relating to cities and towns and their government were taken from Dakota and enacted into the Oklahoma Statutes of 1890 and have been in force in Dakota and Oklahoma, since the adoption of Compiled Laws of Dakota, 1887, and were continued in force in Oklahoma by section 2 of the Schedule of our Constitution. The general powers of the governing bodies of cities and towns, whether they may have been through a mayor and city council, or through a board of trustees, have been the same, since the adoption of the Code by the territory of Dakota, and the manner of exercising the powers of such governing bodies has been the same in principle for almost half a century. The only substantial difference between our present law and the original Code of Dakota territory is that succeeding Legislatures have, from time to time, conferred additional rights and granted additional privileges to cities and towns in answer to the demands of public welfare, but the general rules of government and manner of exercising the additional rights conferred have been the same in principle through all the years since the adoption of the original Code by the territory of Dakota. When the Code was first adopted, cities and towns did not have authority to plant shade trees along the sidewalks, and assess the costs to property owners benefited thereby. Authority to do so was conferred by subsequent Legislatures. Authority to grade the streets was not originally contained in the Code, but that right was subsequently conferred; likewise the right to construct sewers and sidewalks, and later the right to pave streets was conferred by the Legislature. But the jurisdiction over and manner of exercising these rights through a mayor and city council, or mayor and board of aldermen, or through a board of trustees, have been substantially the same at all times, and every additional right which succeeding Legislatures have conferred since the adoption of the original Code has been fought through the courts by parties who sought to avoid payment for improvements which benefited and enhanced the value of their own property.

The validity of the act in question, chapter 176. S. L. 1919. having been sustained and

the validity of the paving law, viz., article 12, chap. 10, R. L. 1910, now article 12. chap. 29, C. S. 1921, having been sustained, the remaining question is whether or not the paving in the instant case was done in conformity with the provisions of said article 12, chap. 10, R. L. 1910.

It is contended that the engineers who made the preliminary estimate, required to be made by statute, could not legally do so because they were nonresidents of the town of Haskell. The town of Haskell had no official or resident engineer, and therefore employed a firm of engineers not residing in the town of Haskell to make the required preliminary estimate. It is contended by plaintiffs in error that any estimate made was illegal for the reason that the engineers were not official engineers of the town of Haskell and not residents of said town. We cannot sustain this contention. We do not recall that this court has ever held, in so many words, that estimates, though made by a nonresident engineer, do not, by reason of such fact, invalidate an assessment, yet in Pitser v. City of Pawnee, 47 Okla. 559, 149 Pac. 201, and in Perkins v. City of Pawhuska, 106 Okla. 5, 232 Pac. 937, assessments were sustained, though the estimates were made by nonresident engineers. This identical question, however, was decided by the Supreme Court of Kansas in City of Abilene v. Lambing, 96 Pac. 838, in which the court said:

"Engineers chosen and employed by the mayor and council of a city of the second class to make plans, specifications, and estimates for a sewer system for the city, and to supervise the construction of sewers, made an estimate in pursuance of section 1009, Gen. St. 1901, under which a contract was let and a sewer constructed. Owners of lots subject to assessment to pay for the sewer sought to enjoin the work and the assessment on the ground that the engineers were nonresidents and ineligible to be city engineers, that they had not been appointed and qualified as such, and that the estimate and contract were therefore invalid. Held, that, as the engineers were chosen by the officer having authority to appoint city engineers at a time when no one else was in possession of the office of city engineer, and as they acted in behalf of the city in respect to the improvement, and had been so recognized by the city authorities and others and had faithfully performed their duties, there was a substantial compliance with the requirement of the statute as to an estimate, and plaintiffs were not entitled to maintain injunction upon the grounds assigned."

In State v. Ray (Ind.) 54 N. E. 1067, an engineer who had been employed to do cer-

tain work was held to be either a de facto or de jure officer. In City of Huntsville v. May (Tex. Civ. App.) 271 S. W. 162, where the identical question was involved, the court held that the fact that the engineer who made the estimate was not a resident of the city did not invalidate the assessment.

It is contended, also, that the estimate made by the engineers in question was not such as is required by statute. The statute, section 615, R. L. 1910, does not prescribe any particular form of estimate, nor prescribe the particular items which such estimate or any estimate shall contain. Said section provides:

"They shall require the city engineer to prepare complete and accurate specifications and estimates, and upon approval thereof by the mayor and city council he shall file the same with the city clerk, whereupon said mayor and city council shall by resolution declare such work or improvement necessary to be done."

The object of this provision is to furnish the governing officers with a character of information which requires skilled persons to furnish information which only skilled persons can furnish. The object is not to prescribe any particular form of report or estimate, nor that such report or estimate shall contain any particular item; it is merely to furnish the officers having power to order the improvements with a character of information upon which they can safely rely, and any estimate sufficient to inform them and satisfy them as to what the character and quality of the improvements will be after completed, and what such improvements will cost, such estimate, if approved, is, in the absence of fraud, sufficient under the law. Hence, the contention in this regard cannot be sustained.

Complaint is also made as to other irregularities in the passing of resolutions and ordinances and publication of notices, but the trial court found from the evidence that no fraud nor substantial irregularities had been shown, and from an examination of all the proceedings had in the instant case, it is our opinion that there were no substantial irregularities in the proceedings, certainly none which affect the jurisdiction of the board of trustees over the subject-matter. See City of Muskogee v. Rambo, 40 Okla. 672, 138 Pac. 567. In fact they appear to be as nearly a strict compliance with all requirements of the statute as could be practicable. Therefore the contentions in regard to irregularities in the proceedings cannot be sustained.

Besides, section 644 of said art. 12 expressly and for a wholesome reason provides that:

"No suit shall be sustained to set aside any such assessment * * * unless such suit sall be commenced not more than 60 days after the passage of the ordinance making such final assessment."

It appears from the record that more than three years had elapsed after the completion of the pavement in question before the filing of this suit, therefore, under said section 644 and under the decisions in Bickel v. Asphalt Co., 70 Okla. 138, 174 Pac. 537; Grier v. Kramer, 62 Okla. 151, 162 Pac. 490; Orr v. City of Cushing, 66 Okla. 153, 168 Pac. 223; Hancock v. City of Muskogee, 66 Okla. 195, 168 Pac. 446; Woodward v. City of Tulsa, 81 Okla. 58, 196 Pac. 683; Crosslin v. Asphalt Co., 71 Okla. 286, 177 Pac. 376; Warner-Quinlan Asphalt Co. v. Smith, 68 Okla. 263, 173 Pac. 516; City of Chickasha v. O'Brien, 58 Okla. 46, 159 Pac. 282; Oliver v. Pickett, 79 Okla. 315, 193 Pac. 526; City of Muskogee v. Burford, 77 Okla. 174, 186 Pac. 949: and James v. City of Sapulpa, 90 Okla. 108, 217 Pac. 382, this proceeding cannot be maintained. This statute has a two-fold purpose, and a two-fold effect, viz.: That of stabilizing and maintaining the credit of a town in the commercial world, and thereby benefiting property owners by maintaining a sound credit for their town; and on the other hand, it carries assurance to contractors and investors in town securities that the legal obligations of the town must be met. At any rate, said provision is express and plain, and has been construed to mean what it says in the cases above cited. It has been frequently held by this court that estoppel applies in cases where property owners, with full notice, stand by without objection until after improvements have been completed, the benefits thereby received, and the improvements become inseparably attached, and then seek to avoid payment of the assessment; but there is no need for resort to the doctrine of estoppel where the statute itself expressly takes care of the subject.

Had the trial court dismissed this proceeding, on the ground that it was barred by the statute, this court no doubt would have sustained the judgment, but inasmuch as the record is here on appeal, we have passed upon the contention made, more in order to settle questions in which the public is interested than because plaintiffs in error have a legal right to have them passed upon.

The judgment of the trial court is affirmed.

NICHOLSON, C. J., and MASON, PHELPS, LESTER, HUNT, CLARK, and RILEY, JJ. concur.