## CITY OF PAULS VALLEY et al. v. CARTER et al.

No. 13908—Opinion Filed March 11, 1924.

Rehearing Denied April 22, 1924.

(Syllabus.)

1. Municipal Corporations—Paving—Bonds—Statutory Requisites.

(a) Under the provisions of article 12, chapter 29, Comp. Stat. 1921, the mayor and city council are authorized, when they deem it necessary, to pave streets and alleys, to determine the character and extent of such paving, the material to be used, to let contracts for such paving, and to levy assessments against the property within the paved districts for the payment of such paving, and to issue bonds in payment of same, but in exercising the authority thus conferred upon them, the mayor and city council must proceed in strict accord with the statutes, and, where bonds are issued in payment of any paving or other improvement contracts, such bonds must not be sold at less than par value.

(b) Furthermore, in making the estimate of costs, provided for in section 4590 of said

statute, it is unlawful to add to such cost such per cent. as will make it appear, or to add any per cent. to same, in order to make it appear that bonds are sold at par.

(c) And, as in the case at bar, where the market value of the bonds issued is 15% less than their par value, the adding of such 15%, in order to meet such discount, is sufficient ground to warrant a court of equity to enjoin the adding of such 15%.

## 2. Same—Protest of Property Owners— Equitable Relief.

(a) Section 4591, Id., is designed to afford and does afford to owners of property within a district to be improved, an opportunity to protest against the making of the contemplated improvements. Such protest, to be sufficient under the statutes, must consist of owners of more than one-half the area of land to be improved; must be filed within fifteen days after the last publication of the resolution provided for in section 4590; it must be in writing and be filed with the city clerk.

(b) The mayor and city council are given authority and jurisdiction to pass upon the sufficiency of such protest. And if such protest be adjudged insufficient, or be not filed within the fifteen days, then said section 4591 provides:

"Then the mayor and council shall have power to cause such improvements to be made and to contract therefor and to levy assessments for the payment thereof."

(c) Should it be made to appear that such protest had been properly filed and grossly disregarded or that gross injustice was being done to protestants, or that fraud was about to be perpetrated upon them, then a court of equity would grant proper relief, even to the extent of enjoining the proposed improvements.

## 3. Same.

(a) A court of law has no express authority to divest the mayor and city council of jurisdiction over matters of city improvements, and no implied authority, in such matters, further than to adjudge and point out any existing invalidities in the proceedings of such city officers, so that same may be corrected by such city officers by a new assessment and levy.

(b) In case of fraud, a court of equity would grant proper relief to either party at any stage of the proceedings.

## 4. Same—Increasing Estimates of Cost of Improvement to Cover Depreciated Value of Bonds—Estoppel of Property Owners.

Although it be unlawful to add to the estimated cost of city street improvements a per cent. which will equal the depreciated value of city bonds issued in payment of such improvements, yet where it does not appear from the estimate on file that such

per cent. was in fact added, and where it does appear that the property owners have filed no protest against such improvements nor taken any action to enjoin the adding of such per cent. to the assessment, and by their failure to act have justified the contractor in assuming that such claim of added per cent. had been abandoned, and where such property owners remained silent and permitted such work to proceed to near completion, and where the proceedings by the city officers have been legal and regular in all other respects, and where such work has been done in satisfactory compliance with the prescribed plans and specifications, and where the bids submitted and contracts awarded were actually for less than the estimated cost, in such case, the contractor is entitled to the full value of his contract less the difference between same and the per cent. added for depreciation in market value of the bonds.

Error from District Court, Garvin County; W. L. Eagleton, Judge.

Action by R. A. Carter and others against the City of Pauls Valley and others. Judgment for plaintiffs. and defendants bring error. Reversed and remanded.

H. G Butts, City Attorney, A. F. Pyeatt, G. A. Paul, Rittenhouse & Rittenhouse, McPherren & Hannah, and Henshaw & Hough, for plaintiffs in error.

Blanton & Osborn, C. W. Thomason. Patchell & Hurt, and Ledbetter, Stuart, Bell & Ledbetter, for defendants in error.

HARRISON, J. This was an action by certain property owners in the city of Pauls Valley against the said city and its mayor and board of commissioners, to enjoin assessments for certain pavement improvements within certain districts wherein said plaintiffs owned certain properties. The action was begun to enjoin the levy of said assessments and to enjoin defendant contractors from laying the pavement which they had contracted with the mayor and city council to lay.

The questions presented have been exhaustively briefed and ably argued to this court by the respective counsel. But while it is an action in the nature of a "special proceeding" authorized by statute, yet it is one which in its very nature must be determined by applicable principles of equity and natural justice, and though this be true as to its proper determination, yet we are forced to note that the sole grounds upon which each of the respective parties have sought to win have been purely technical in their nature.

Authority for letting contracts of the character herein involved is found in section

4590, Compiled Statutes 1921, formerly section 615, Revised Laws 1910, which is:

"When the mayor and council shall deem it necessary to grade, pave, macadamize, gutter, curb, drain, or otherwise improve any street, avenue, alley, or lane, or any part thereof, within the limits of the city, they shall require the city engineer to prepare complete and accurate specifications and estimates, and upon approval thereof by the mayor and council, he shall file the same with the city clerk, whereupon said mayor and council shall, by resolution, declare such work or improvement necessary to be done. Said resolution shall be published in six consecutive issues of a daily newspaper, or two consecutive issues of a weekly newspaper, published and having circulation within such city."

It is material to note in this connection the provision in the central part of the foregoing section which provides:

"They shall require the city engineer to prepare complete and accurate specifications and estimates, and upon approval thereof by the mayor and council, he shall file the same with the city clerk, whereupon said mayor and council shall, by resolution, declare such work or improvement necessary to be done."

When the foregoing provision has been complied with, then one material initial step toward the contemplated improvement has been taken and becomes a permanent step if properly followed up.

The next step to be taken is that provided for in the latter portion of said section, which is:

"Said resolution shall be published in six consecutive issues of a daily newspaper, or two consecutive issues of a weekly newspaper published and having circulation within such city."

And this constitutes the second material initial step toward the contemplated improvement, and until the last mentioned step is taken the right of the taxpayer or property owner to enjoin does not lie, nor is the right of protest given. See Pitser v. Pawnee, 47 Okla. 559, 149 Pac. 201; also Pryor v. Paving Co., 74 Oklahoma, 184 Pac. 88; and also section 4591, Id., which provides:

"If the owners of more than one-half in area of the land liable to assessment to pay such improvement shall not, within fifteen days after the last publication of such resolution, file with the clerk of said city their protest in writing against such improvement, then the mayor and council shall have power to cause such improvement to be made and to contract therefor, and to levy assessment for the payment thereof. Any number of streets, avenues, lanes, alleys, or other public places, or parts thereof, to be so improved may be included in one resolution; but such protest or objection shall be made separately as to each street or other highway."

It will be observed that three distinct requisites are included in the foregoing protest:

(1) That it shall consist of owners of more than one-half of the area of the land liable to assessment for such improvement:

(2) It must be filed within fifteen days after the last publication of the resolution, provided for in section 4590, supra.

(3) It must be filed with the clerk of the said city and be in writing.

It will be noted that after these steps are taken on the part of the property owners, or after the time has expired for taking such steps, said section 4591 further provides:

"Then the mayor and council shall have power to cause such improvements to be made and to contract therefor and to levy assessment for the payment thereof."

Section 4597, Id., provides:

"After the expiration of the time for objection or protest on the part of the property owners, or if no sufficient protest be filed, or on receipt of a petition for such improvement signed by the owners of more than one-half in area of the land to be assessed, if such petition shall be found to be in proper form and properly executed, the mayor and council shall adopt a resolution reciting that no such protest has been filed, or that such protest, if filed, was insufficient, or the filing of such petition, as the case may be, and expressing the determination of the council to proceed with the improvement, defining the extent, character and width of the improvement, stating the material to be used, the manner of construction, and such other matters as shall be necessary to instruct the engineer in the performance of his duties in preparing for such improvement the necessary plans, plats, profiles, specifications and estimates, which specifications and estimates shall, as nearly as practicable, follow the preliminary specifications and estimates, and shall, upon approval by the council, be filed and remain with the city clerk."

From the foregoing sections, viz., 4590, 4591, and 4597, it will be noted that the mayor and city council, or city commissioners, have express authority, whenever they deem certain improvements necessary, to require the city engineer to make plans and specifications and estimates of costs and submit same to the mayor and city council, and upon their approval of the engineer's report, it then becomes the duty

of the engineer to file his approved report with the city clerk, and upon the filing of same it then becomes the duty of the mayor and city council to pass their resolution for such contemplated improvements and to publish same as required in the latter clause of section 4590, supra.

It will be noted, also, that the engineer's report is not required to be filed with the city clerk until approved by the mayor and city council, and thus it is seen that the mayor and city council are given power to pass upon the engineer's report, and upon the approval of such report and the filing of same with the city clerk, it thereupon becomes the duty of the mayor and city council to pass their resolution and to publish same as required in said section 4590, and within fifteen days after the last date of publication of said resolution the property owners of the district are authorized to file protests in writing with the city clerk against such improvements, that is, against the proposed improvements being made at all, and this is the only means and only opportunity given to property owners, by statute, to object to the improvements being made, and, under section 4587, supra, the city council is given authority and jurisdiction to pass upon the sufficiency of such objections or protests, that is, whether they be in writing and filed with the city clerk, and be sufficiently specific as to designate the property owned by them; whether they have been filed within the fifteen days from date of last publication of the resolution, and whether they consist of owners of more than one-half in area of the land in the district to be improved; and if such protests are found defective or insufficient in any of the requisites prescribed in section 4591, supra, then the commissioners are authorized to adopt a resolution reciting such defects and that such protests have not been approved, or have not been filed at all, and to proceed thereupon as prescribed in said section 4597.

And it was held by this court in Newman v. City of Okmulgee, 84 Okla. 147, 202 Pac. 1006, that:

"In adopting final plans and specifications for improvement of streets, it is not necessary that the city adhere strictly to the preliminary plans and specifications, but they should be adhered to as nearly as practicable."

However, if it should be made to appear that the protests provided for in said section 4591 had been grossly disregarded, or arbitrarily overruled by the mayor and councilmen, or that gross injustice had been done to property owners, or gross fraud was going to be perpetrated upon them, a court of equity would grant proper relief in the premises, even to the extent of enjoining the proposed improvements from being made, but in the absence of timely action upon such grounds, and before the material rights of other parties became involved, under a justifiable assumption that irregularities had been waived, then section 4598, Id., provides:

"Said resolution (meaning the one provided for in 4597, supra) shall set forth any such reasonable terms and conditions as the mayor and council shall deem proper to impose with reference to the letting of the contract and the provisions thereof; and the mayor and council shall, by said resolution, provide that the contractor shall execute to the city a good and sufficient bond, in an amount to be stated in such resolution, conditioned for the full and faithful execution of the work and the performance of the contract for the protection of the city and all property owners interested, against any loss or damage by reason of the negligence of the contractor, or improper execution of the work, and shall also require a bond, in an amount to be stated in such resolution, for the maintenance in good condition of such improvement for a period of not less than five years from the time of its completion."

Section 4599 provides:

"Said resolution shall also direct the city clerk to advertise for sealed proposals for furnishing the materials and performing the work necessary to make such improvement. The notice for such proposals shall state the street, streets, or other public places to be improved, the kind of improvements proposed, what bonds will be required to be executed by the contractor, as aforesaid, shall refer to the plans and specifications, and shall state the time when and the place where such sealed proposals shall be filed, and when and where the same will be considered by the mayor and council. Said notice shall be published in ten consecutive issues of a daily newspaper, or two consecutive issues of a weekly newspaper published, and of general circulation in said city."

Section 4600 provides:

"At the time and place specified in such notice, the mayor and council shall examine all bids received, and, without unnecessary delay, award the contract to the lowest and best bidder, who will perform the work and furnish the materials which may be selected, and perform all the conditions imposed by the mayor and council, as prescribed in such resolution and notice for proposals, the aggregate amount of which contract shall in no case exceed the aggregate estimate of cost submitted by the engineer with the plans and specifications; and the mayor and council shall have the right to reject any and all bids, and to re-advertise for other bids when any such bids are not, in

their judgment, satisfactory: Provided, that the letting shall not be complete until the contract is duly executed, and the bonds approved."

Section 4601 provides that as soon as the contract is let and the cost of such improvement is ascertained the mayor and council shall by resolution appoint a board of appraisers to appraise and apportion the benefits of the several lots and tracts of land; and section 4602 provides that within five days after receiving notice of their appointment, such appraisers shall proceed to appraise and apportion the benefits of said lots and tracts of land and shall file written report of their appraisement with the city clerk within ten days from date of notice of the appointment of such appraisers. Section 4603 provides that when said appraisers' reports shall have been made and filed with the city clerk, the city clerk shall give notice in five consecutive issues of a daily newspaper or two consecutive issues of a weekly newspaper, to the property owners of the improved district, that the mayor and city council will grant a hearing to the parties affected for the purpose of adjusting any unfair apportionment, and that the time fixed for said hearing shall be not less than five nor more than ten days from the last publication.

Section 4604 provides for the corrections which the mayor and city council may make. After such hearing is granted and corrections made, if any, the mayor and city council are authorized to make the requisite assessment in conformity with said appraisement and, by ordinance, levy assessments in accordance with such appraisement.

Sections 4606 to 4618 contain provisions not pertinent to any issues presented here, but section 4619 provides:

"No suit shall be sustained to set aside any such assessment, or to enjoin the mayor and council from making any such improvement, or levying or collecting any such assessment, or installment thereof, or interest or penalty thereon, or issuing such bonds, or providing for their payment, as herein authorized, or contesting the validity thereof on any ground, or for any reason other than for the failure of the city council to adopt and publish the preliminary resolution provided for in cases requiring such resolution and its publication, and to give the notice of the hearing on the return of the appraisers, unless such suit shall be commenced not more than sixty days after the passage of the ordinance making such final assessment. Provided, that in the event that any special assessment shall be found to be invalid or insufficient in whole

or in part, for any reason whatsoever, the city council may at any time, in the manner provided for levying an original assessment, proceed to cause a new assessment to be made and levied, which shall have like force and effect as an original assessment."

Thus in any event and for any invalidity or insufficiency in whole or in part, or for any reason whatsoever, the mayor and city council have authority and retain jurisdiction to cure such irregularities found by causing a new assessment to be made and levied, which shall have the same effect as an original assessment, and thus it is seen that the courts in no event are given power to set aside an assessment, nor to divest the city officers of jurisdiction, but have an implied power to point out any existing invalidity or irregularities so that same may be corrected by a new assessment and levy, made by the city officers.

Now we will grant for the sake of argument that the respective suits were filed "not more than sixty days after the passage of the ordinance making such final assessment."

We note that it is not disputed that the trial court found:

"That the resolution of intention to pave was passed as provided by law; that there were no written protests or objections filed within the time provided by statute; and that the statute was strictly followed in all matters up to the report of the city engineer required by section 615, Rev. Laws 1910; that the city engineer prepared specifications and estimates and filed same with the clerk, but that he included in said estimates 15 per cent. to cover possible discount on bonds that might be issued in each of the several improvement districts; that thereafter notice was given that protests might be filed under the provisions of section 616, Rev. Laws 1910, and no protests were filed; that advertisement was made as required by statute asking for bids on the improvements under the plans and specifications as filed; and that the Standard Paving Company was the lowest and best bidder, and the bid of said company was accepted and a contract thereafter entered into by the mayor and city council of Pauls Valley with such company; that the resolution provided for in section 622, Rev. Laws 1910, was properly passed and published, and, at the time the bids were considered, certain citizens of Pauls Valley met with the mayor and commissioners and I. V. Gray, president of the Standard Paving Company, and quite a discussion took place with reference to what was contained in the estimate, and on which the contract was afterwards entered into; that the said I. V. Gray stated that if any property owner would pay the assessment against the property within 30 days, his assessment would

be discounted 15 per cent. and the question came up in said meeting and was openly discussed with reference to the including in said estimate of 15 per cent. to cover the possible loss the contractor would suffer by reason of the bonds not being able to be sold at par"

—and that upon such finding the court concluded as a matter of law:

"First, that the city council, while there is no fraud or no sufficient fraud, has the right to determine first as to the necessity of making improvements, and secondly as to the apportionment of. improvements made, and the court has no right to consider those matters unless it be, as suggested above, on the question of fraud, in which event the court may go into it. The court concludes that the including in the assessment the 15 per cent. to provide for a possible loss in the sale of the bonds was illegal, and that everything done with reference to the improvements in all of these paving districts was void and of no effect and within the contemplation of the statute."

In view of the foregoing provisions of statute and the finding of facts by the trial court, which are not complained of by defendants in error, and in view of the express authority conferred upon the mayor and city council, and of the absence of express authority of the court in such matters, we are constrained to hold that such implied authority of the court as reasonably arises from the nature of the statutory provisions has been exceeded and disregarded, and in view of the further fact that most of the paving required to be done under the contract involved had been completed previous to the trial of this cause, and that it has been conceded to be a good piece of work and satisfactory to the property owners, so far as the quality of the work is concerned, we are constrained to hold that the principles of equity and natural justice applicable in premises were disregarded by the trial in holding such contract utterly null and void and of no effect, and thereby depriving the contractors of remuneration justly due them for the work done while the property owners stood idly by without asserting their statutory right of protest, and allowed it to proceed without an effort at hindrance, until the work was practically completed and they had received the benefits thereof.

Under the authority of Weaver v. City of Chickasha, 36 Okla. 226, 128 Pac. 305; Colgate v. Gentilini, 51 Okla. 552, 152 Pas. 95; Terry v. Hinton, 52 Okla. 170, 152 Pac. 851, such injustice will not be permitted.

In the matter of equitable relief to the property owner, the sixty-day limitation for bringing a suit should not be so material in case of gross fraud or collusion on the part of the city officers and contractor, nor should the fact that such suits were brought within the sixty days be sufficient grounds for nullifying the contract, where the property owner has remained silent and allowed the work to be completed before bringing his action, but in such cases the broader principles of equity should be applied in determining the rights of the parties. And where every step necessary to the validity of such contracts had been taken as required by law and jurisdiction over such improvements has been acquired by the mayor and city council, and no authority given the courts to divest such mayor and city council of such jurisdiction, and no implied authority given to the courts, except merely to point out irregularities or invalidities which, after being pointed out by the courts, are authorized by statute to be corrected, not by the court, but by the mayor and city council, and where the work under such contract has proceeded to near completion and is satisfactory in its quality and character, equity will not nullify a contract and deprive the contractor of all remuneration for his labor. merely because the city engineer may have included in his preliminary estimate, and as part of the cost, 15 per cent. of the entire cost as an allowance for discount, so that the bonds for such improvement be sold at par.

It is contended that the city engineer actually added 15 per cent. to the entire cost, so that it might appear that the bonds were sold at par.

It is also contended that such added per cent. was openly discussed at the hearing provided for in section 4603, supra, and that some of the contractors were present at such hearing, and took part in the discussion, but this contention does not conclusively appear from the record. However, conceding for argument's sake that such contention be true, it is apparent from the record that the bids submitted were actually from 11 to 15 per cent. lower than the estimate, and that the contracts were let at from 11 to 15 per cent. less than the estimate. In such case, equity could do no less than to allow the contractors the full amount of their bids, less the difference between each bid and the alleged 15 per cent. That is, that such contracts as were awarded for 15 per cent. less than the engineer's estimate, the contractor is entitled to the face value of his contract, and where such contracts were awarded for 11 per cent. less than such estimate, then the property owner is entitled to a discount, on his

assessment and levy, of the difference between 11 and 15 per cent.

For these reasons, the judgment of the trial court is reversed and remanded, with directions to render judgment in accord with the views herein expressed.

BRANSON, MASON, LYDICK, and WARREN, JJ., concur.

McNEILL, NICHOLSON, and COCHRAN, JJ., dissent.