## PERKINS v. CITY OF PAWHUSKA et al. SAME v. SAME.

Nos. 14818 and 14816—Consolidated.

Opinion Filed Dec. 9, 1924.

Rehearing Denied Jan. 20, 1925.

1. **Municipal Corporations—Street Improvements—Jurisdiction—Effect of Unavoidable Delay by Litigation.**

In this state municipal corporations are authorized by article 12 of ch. 29, Comp. Stat. 1921, to improve streets by grading, paving, curbing, guttering, and draining same, and to assess the cost of such improvements against adjacent property benefited ehereby. In order to do this, jurisdiction must be acquired in one of two ways, specifically pointed out therein. Where jurisdiction has been acquired by resolutions of necessity, preliminary specifications, and

estimates, and absence of protest by property owners affected, who have received legal notice thereof, such jurisdiction is not ousted by delay in the proceedings caused by adverse litigation where the paving program is resumed, contract let, and work completed within a reasonable time after such adverse litigation is settled.

**2. Same—Effect of Rescinding Resolution as to Kind of Material.**

Neither is jurisdiction lost by rescinding resolution determining to pave with a certain kind of material, the resolutions rescinded being specifically named and described and the reasons for their rescission being specifically stated, and no mention being made in the rescinding resolution of the jurisdictional resolution of necessity. The maxim, expressio unius est exclusio alterius, applies.

**3. Same—Defects in Proceedings, Materials or Methods of Construction.**

Where jurisdiction has been acquired, the details of all subsequent proceedings in letting the contract, selecting the materials, and supervising the construction are matters for the exercise of legislative and administrative judgment, and errors in the exercise of these functions are mere irregularities which do not inhere in the proceeding so as to vitiate the final assessing ordinance based thereon, in the absence of fraud or collusion.

**4. Same—Injunctional Relief—Laches of Property Owners.**

Property owners affected who know of such alleged irregularities cannot quiescently permit the work of construction to proceed, the expenditure of time, labor, and money for their benefit to be made, and then attack the validity of the final assessing ordinance on nonjurisdictional grounds through injunctive process. Equity will not aid such laches by declaring such irregularities to be remediable wrongs, in the absence of jurisdictional defects in the proceedings.

(Syllabus by Logsdon, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Osage County: John L. Norman, Assigned Judge.

Action by S. W. Perkins against the City of Pawhuska et al., for an injunction to prevent the City of Pawhuska and the City Commissioners from certifying special assessments for street improvements to the County Treasurer of Osage County for collection, and from passing any ordinance or resolution attempting to levy such assessments against the property of the plaintiff. Decree for defendants denying the injunction, and dissolving a temporary injunction theretofore granted. From this decree the plaintiff prosecutes error. On motion in this court the companion case of B. W. Perkins v. City of Pawhuska et al., No. 14816, on the docket of this court, was by order of this court consolidated with No. 14818, and both cases will be disposed of in one opinion. Affirmed.

It appears that on January 16, 1920, the city commissioners of Pawhuska passed a resolution of necessity declaring it necessary to permanently improve certain streets and alleys in said resolution named and specified. By said resolution the city engineer was directed and instructed to make accurate specification and entimates of the cost of the proposed improvements and submit same to the board of commissioners for approval. The city engineer complied with this resolution, and on January 19, 1920, the city commissioners passed another resolution approving the engineer's specifications and estimates, and declared it necessary to pave and otherwise improve the streets and alleys specified, and provided by said resolution that the same should be published in six consecutive issues of the Pawhuska Daily Capital, a daily newspaper, and of general circulation in said city. Said resolution contained this further provision:

"That if the owners of more than one-half in area of the lots and tracts of land liable to assessment to pay for such improvements, which assessment shall include the cost of improving the street and alley intersections, shall not within fifteen days (15) after the last publication of this resolution, file with the city clerk of the city of Pawhuska, Okla., their protest in writing against such improvements, then the board of commissioners shall cause such improvements to be made and contracted for and shall levy assessments for the payment thereof against said tracts of land liable to assessment to pay for such improvements, as provided for in sections 608 to 646, article 12, chapter 10 of the Revised Laws of the state of Oklahoma. 1910."

There were no protests of any kind or character filed against the proposed action of the city commissioners, and thereafter, on May 6, 1920, in conformity with the resolution of January 19, 1920, the board of commissioners by resolution duly passed determined to proceed with such paving of the streets, alleys, and intersections specified. In said resolution the city engineer was instructed to prepare "the necessary plans, plats, profiles, specifications, and estimate of cost, which shall as nearly as practicable follow the preliminary specifications and estimate heretofore prepared and approved."

The city then advertised for bids for the construction of such improvements, the paving to be of brick, but a few days before the time for opening bids proceedings were halted by a temporary restraining order issued out of the district court enjoining the letting of said contract until the matter could be passed upon by the court. This was the beginning of a series of legal fights which continued for about a year before they were finally disposed of, and the city became free to resume its proceedings.

It appears that in February, 1921, and a short time prior to an election at which new city officers under an amendment to the city charter were to be elected, the old board of commissioners met on the 17th of that month and passed a resolution rescinding and repealing the resolution of May 6, 1920. In May, 1921, the new commissioners went into office under the changed form of city government. On July 11, 1921, a resolution was adopted approving a contract with H. G. Olmstead & Company, to act as engineers for the city in the construction of a number of public works, including the paving. Thereafter, on October 10, 1921, the city commissioners adopted resolution No. 708, which was a resolution of determination to proceed with the paving, and was similar to the resolution of May 6, 1920. Resolution No. 708 recited the adoption of the resolution of January 16, 1920, and the adoption of the resolution of January 19, 1920, the publication of the same, and the absence of protest by the property owners thereunder. It provided in section 4 as follows:

"The city engineer of the city of Pawhuska is hereby instructed to prepare for said improvements the necessary plans, plats, profiles, specifications and estimates of cost, which shall as nearly as practicable follow the preliminary specifications and estimates heretofore prepared and approved."

This resolution called for bids for construction work contemplated thereby, and on October 27, 1921, the contract was let to Stanton & Ammerman Company, and the work was thereafter prosecuted and the improvements completed under this contract. Appraisers were appointed for the purpose of ascertaining and determining the apportionment of the betterments to the various lots, tracts, and parcels of land abutting these improvements, and on July 13, 1922, the city commissioners adopted a resolution fixing July 27, 1922, at 7:30 p. m. as the time the commissioners should meet for the purpose of hearing complaints or objections concerning the appraisements and the apportionment of the value of the improvements to the various properties benefited thereby. This resolution was published as required by law. Thereafter, on July 31, 1922, the final assessing ordinance was adopted. Thereafter, on September 2, 1922, this action was commenced by plaintiff filing his petition in the district court of Osage county praying for an injunction. Answers were filed by Stanton & Ammerman Company and by the city of Pawhuska and the cause came on regularly for hearing on April 26, 1923, resulting in a decree denying the injunction prayed for by plaintiff and dissolving the temporary injunction theretofore granted, and after unsuccessful motion for new trial plaintiff has brought the case here by petition in error with case-made attached for review.

Gray & Palmer, H. P. White, L. P. Mosier, C. S. McDonald, and Joseph D. Mitchell, for plaintiffs in error.

A. N. Murphy, City Attorney, G. A. Paul, and Widdows & McCoy, for defendants in error.

Opinion by LOGSDON, C. Plaintiff's arguments and authorities for a reversal of this case are presented in his brief under ten propositions. His first proposition questions the jurisdiction of the city of Pawhuska and its board of commissioners to proceed with the paving at the time the contract was let on October 27, 1921, his two contentions being that there was no jurisdictional resolution of necessity in force at that time, but if there was, then the contract was not let on the basis of the preliminary specifications and estimates of the city engineer.

It is conceded that whatever was done to acquire jurisdiction of the paving project was attempted to be done under the provisions of Comp. Stat. 1921, secs. 4590 and 4591. It is also conceded, or at least not questioned, that the preliminary or necessity resolution of January 19, 1920, together with the specifications and estimates of the city engineer adopted at that time, were sufficient to confer jurisdiction on the city and its board of commissioners if the proceedings had thereafter been prosecuted without unnecessary delay. No protest of any kind was filed against the resolution of January 19 within 15 days from the date of its last publication, as authorized by section 4591, supra. Thereafter, on May 6, 1920, the city commissioners proceeded to exercise the jurisdiction thus acquired by adopting a resolution determining to proceed. This resolution was in full con-

formity with the provisions of Comp. Stat. 1921, section 4597.

It is upon matters arising after the adoption of this resolution that plaintiff relies to establish his contention that no resolution of necessity was in existence to give jurisdictional support to the proceedings of the city commissioners in 1921 and 1922.

Before the day arrived for opening bids under the resolution of May 6, 1920, all proceedings were halted by an injunction suit, and this, with other actions, held all proceedings in abeyance until some time subsequent to February 17, 1921. This delay is relied on as one of the facts to establish abandonment by the city of its acquired jurisdiction. It is not considered, however, either on reason or authority, that delay in the proceedings occasioned by adverse litigation can ripen into abandonment of acquired jurisdiction during the pendency of such litigation. If such were the law jurisdiction by the city could be ousted in any case by the collusive action of minority property owners in filing and prosecuting successive actions.

Another fact relied on to establish abandonment is the resolution adopted by the city commissioners February 17, 1921. This resolution recites the adoption of the resolution of May 6, 1920, determining to pave certain districts with a certain described paving material, and the adoption of the resolution of May 26, 1920, determining to pave certain other districts with a certain described paving material, and then continues thus:

"Whereas, the said resolutions so passed do not meet with the approval of the citizens of said city, with reference to the kind of paving material designated therein; and,

"Whereas, at a mass meeting of the citizens, held at the Commercial Club rooms on the 15th day of February, 1921, a resolution was passed requesting the board of city commissioners to rescind the above resolutions; and,

"Whereas, it is the desire of the city commissioners to comply with the wishes of the citizens of said city; now, therefore,

"Be it resolved by the board of commissioners of the city of Pawhuska, Okla., that all of said resolutions, above described, be, and they are hereby, rescinded, revoked and annulled and declared to be of no further force or effect."

There is no language here which, by the most strained construction, can be held to contemplate the abandonment of the paving program. On the contrary, the language is apt to exclude such an inference. The jurisdictional resolution of necessity of January 19, 1920, is not mentioned and the maxim, expressio unius est exclusio alterius, seems peculiarly applicable to this action of the city commissioners. It is expressly stated that it is the desire of the city commissioners "to comply with the wishes of the citizens" "with reference to the kind of paving material designated." This evinces an intention to pave rather than an intention to abandon.

Significance is added to the language of this resolution by evidence disclosed in the record of facts and circumstances leading up to and attending its adoption. Two city campaigns were in progress. One was to amend the city charter, which was done April 6, and the other was to elect officers, which was done April 15. In conjunction with these two campaigns mass meetings were being held in an effort to get the pending litigation, which had tied up the paving, settled, and to reach an agreement on the kind of material to be used for paving. The record appears to be uniformly harmonious to the effect that all factions desired the paving to be constructed, the parting of the ways being reached only when the character of material to be used was under discussion. Pursuant to such a mass meeting held February 15, the resolution of February 17 was adopted. Thereafter the pending suits were dismissed, the amended charter became operative, and the new city commissioners entered upon the discharge of their duties April 30, 1921.

It seems clear, therefore, that the city commissioners had jurisdiction to proceed, which the new city commissioners did on the day they were sworn into office by asking for the resignation of the city engineer, a nonsalaried officer. Thereafter, on July 11, they entered into a contract with H. G. Olmstead & Company to act as engineers for the city, and on October 10th adopted resolution No. 708, which was a determining resolution conforming in all respects to the provisions of Comp. Stat. 1921, section 4597. The time from the dismissal of the injunction suits in the spring of 1921 until the adoption of the determining resolution of October 10th cannot be held to constitute an unreasonable delay under the circumstances shown. No provision of law at that time required the determining resolution to follow the resolution of necessity within any fixed period of time, and in the absence of such requirement a reasonable time is always implied. Heman v. Gilliam (Mo.) 71 S. W. 163; Jaicks v. Middlesex Inv. Co. (Mo.) 98 S. W. 760;

Barber Asphalt Paving Co. v. Kansas City H. P. Brick Co. (Mo.) 156 S. W. 749.

Plaintiff's second contention under his first proposition is that the specifications and estimates approved January 19, 1920, were changed by the final specifications and estimates adopted in resolution No. 708, and that therefore jurisdiction under the original resolution of necessity was lost.

The "specifications and estimates" required by Comp. Stat. 1921, section 4590, are by section 4597 referred to and denominated as "preliminary specifications and estimates." That this denomination is accurate and designedly used is shown by the fact that it is only in the determining resolution, after jurisdiction has been acquired, that the city is authorized to act in "defining the extent, character and width of the improvement, stating the material to be used, the manner of construction and such other matters as shall be necessary to instruct the engineer in the performance of his duties in preparing for such improvement the necessary plans, plats, profiles, specifications and estimates," etc.

If plaintiff's contention is correct that the "preliminary specifications and estimates" are binding then the Legislature stultified itself by enacting section 4597. If the city is bound by the details of the "preliminary specifications and estimates" it is futile and ineffectual to say that it shall thereafter define "the extent, character and width of the improvement," state "the material to be used, the manner of construction," etc.

In the instant case it is not contended that the contract was in excess of the estimate of the engineer approved by the resolution of October 10, 1921. As a matter of fact it was less than that estimate, and that estimate was less than the preliminary estimate. The real complaint is that the width of the paving is less than that contemplated by the preliminary estimate, thus resulting in a demonstrable increase in some of the unit bases of cost over those of the preliminary estimate. The right to determine the width of the paving, the material to be used, and the manner of construction is vested exclusively in the city and its board of commissioners after jurisdiction is acquired, these details to be worked out to conform "as nearly as practicable" to the preliminary estimate. (Comp. Stat. 1921, section 4597.)

As was said by Justice Hardy in the case of Pitser v. City of Pawnee, 47 Okla. (sp. cit.) 562, 149 Pac. 202:

"In the case at bar the defendants had proceeded only to the point where they were about to publish the original resolution declaring that a necessity existed for such work, so as to enable the property owners to appear before the council and present objections to the making of same, when this suit was brought. The estimates and specifications furnished by the engineer were not the final plans and estimates, and the approval thereof did not bind the defendants to adhere strictly to them, as final plans and estimates are required to be furnished after opportunity for objections by the property owners and after the council have determined to proceed with the work, neither of which had been, or could have been, done at the time the suit was begun. The city might abandon the steps taken and not make the improvements at all, and this it might do at any time prior to making the contract."

Justice McNeill, in the case of Newman v. City of Okmulgee et al., 84 Okla. (sp. ct.) 148, 202 Pac. 1006, after quoting the above paragraph from the Pitser Case, said:

"It will appear from a reading of the case and from the statute that in adopting the final plans and specifications it is not necessary to adhere strictly to the preliminary plans and specifications, but they should be adhered to as nearly as practicable."

It is therefore concluded as to the first proposition that the city of Pawhuska and the city commsisioners, under the facts shown in this record, never rescinded the jurisdictional resolution of necessity, nor was there an abandonment of the acquired jurisdiction by unreasonable delay. It is further concluded that the contract price was not in excess of the "aggregate estimate of cost submitted by the engineer with the plans and specifications," but was in conformity with the requirements of Comp. Stat. 1921, section 4600.

Plaintiff's second proposition reads:

"The property owners petitioned for a different kind of paving than they received and cannot be compelled to accept or pay for it."

Jurisdiction having been acquired to proceed with the paving program, the details of construction were legislative and administrative matters to be determined by the city through its board of commissioners. An error of judgment in the exercise of these functions might constitute such irregularity as to authorize correction by the courts in an appropriate action timely brought for that purpose, but it is an irregularity merely, and does not affect the jurisdiction so as to inhere in the subsequent proceedings and vitiate the final as-

sessing ordinance. Estoppel operates against such contention after the work is suffered to be completed without legal action. Kerker v. Bacher, 20 Okla. 729, 95 Pac. 981; City of Muskogee v. Rambo, 40 Okla. 672, 138 Pac. 567; City of Coalgate et al. v. Gentilini, 51 Okla. 552, 152 Pac. 95; Wey v. City of Hobart et al., 66 Okla. 175, 168 Pac. 433; Pryor v. Western Paving Co. et al., 74 Okla. 308, 184 Pac. 88. Neither of these cases involved the application of the 60-day limitation prescribed by Comp. Stat. 1921, section 4619, each of the actions having been commenced within the 60-day period, just as in the instant case.

The third proposition relied on is that a portion of the assessment levied is for a storm sewer to drain off the surface water in this district, and that such assessment is void. A careful examination of the record in this case discloses no substantial difference in its facts from those considered by this court in the case of City of Sand Springs v. Hohl, 90 Okla. 124, 216 Pac. 138. In that case, as in the instant case, the storm sewer was designed to take care of surface water coming from outside the district, by reason of the natural drainage, into the district. The size of the sewer required for this purpose was a matter for determination by the city commissioners, and if an error of judgment resulted in larger drainage facilities than were necessary this fact cannot vitiate the final assessing ordinance, jurisdiction to determine that fact existing.

Plaintiff's fourth proposition questions the legality of the engineer's fees charged in the assessing ordinance, and reliance is placed on the authority of City of Tulsa et al. v. Weston et al., (not officially reported) 216 Pac. 98, and he quotes the third paragraph of the syllabus. That opinion was withdrawn by this court and the law of that case is now as stated in City of Tulsa et al. v. Weston et al., 102 Okla. 222, 229 Pac. 108. Upon the authority of this later opinion, and the rule laid down by this court in Arnold et al. v. City of Tulsa et al., 38 Okla. 129, 132 Pac. 669, this contention of plaintiff must be held untenable.

Under his fifth proposition plaintiff urges error of the trial court in refusing to reduce the assessment 10 or 15 per cent., claimed to be the amount added to the preliminary estimate to cover anticipated depreciation in the value of the bonds, and in refusing to hold that this addition to the preliminary estimate vitiated the entire proceeding. Reliance is placed upon the case of City of Pauls Valley v. Carter, 22 App. Ct. Rep. 155. This opinion, like the first opinion in the Weston Case, has been withdrawn by this court and the law of that case is now stated in City of Pauls Valley v. Carter, 101 Okla. 205, 224 Pac. 528. It is not shown by the record in the instant case that any sum whatever was added to the final estimate of cost, approved October 10, 1921, and on which the contract was based, to cover depreciation of the bonds. Upon the authority of the later opinion in the Pauls Valley Case these contentions of plaintiff must be overruled.

Plaintiff next contends that the trial court erred in holding that fraud vitiating the contract had not been established. Fraud, being always a question of fact, the finding of the trial court on this question, this being a proceeding in equity, is conclusive in this court unless contrary to the clear weight of the evidence. The testimony in the record on this question, covering some 60 pages, has been carefully read and considered. If this were a law action the testimony relied on would be wholly insufficient to establish the allegation of fraud. This being an equitable action it is only necessary to establish facts from which fraud may be fairly inferred. The trial court found that such facts had not been established, and it cannot be said as a matter of law that such finding is clearly against the weight of the evidence.

Plaintiff's seventh proposition complains of rulings of the trial court in the admission and exclusion of testimony, to which exceptions were duly reserved. Plaintiff does not favor this court by quoting or citing the testimony claimed to have been erroneously admitted. The testimony quoted, which is claimed to have been erroneously excluded, is not considered by this court to have been competent for the purpose for which it was offered.

Plaintiff's eighth proposition urges error of the trial court in its finding of fact, and alleges same to be contrary to the evidence. This contention has been sufficiently covered by the discussion herein under the first and sixth propositions.

The ninth proposition presents alleged error of the trial court in concluding as a matter of law that plaintiff is estopped by his quiesence from maintaining this action for mere irregularities in the proceeding and in the construction work. This proposition has been fully covered by the discussion under the second proposition, and plaintiff's contention must be overruled under

the authority of Kerker v. Bocher, supra, and other cases there cited.

It follows from what has been said that plaintiff's tenth and last proposition, that the trial court erred in overruling motion for new trial, cannot be sustained.

It is therefore concluded upon the whole case that the findings and conclusions of the trial court are correct, and its judgment should be affirmed.

By the Court: It is so ordered.