**BOCOX et al. v. TOWN OF BIXBY et al.**

No. 16200—Opinion Filed April 20, 1926.

Rehearing Denied May 18. 1926.

(Syllabus.)

1. **Municipal Corporations—Street Improvements for Incorporated Towns—Validity of Statute.**

Chapter 176, S. L. 1919, which is : "An act providing for the establishing and changing of the grade of any street, avenue, land, alley or other public place in any incorporated town in the state of Oklahoma, having a population of more than 1,000, as shown by the last federal census, or any special census taken for that purpose, and for permanently improving the same by paving, macadamizing, curbing, guttering and draining the same, including the installaton of manholes. sewers, and catch-basins; providing for paying for said improvements and declaring an emergency," is held to be constitutional and valid.

2. **Same—Estimates by Nonresident Engineer—Sufficiency.**

The fact that a town may have no official resident engineer and may employ a nonresident engineer to make the estimate required to be made by section 615, R. L. 1910 (now section 4590, C. S. 1921), does not of itself, in the absence of fraud, invalidate the assessments.

The jurisdictional feature of the statutory requirement for an estimate does not consist in the official character of the engineer who makes the estimate, but the purpose of such requirement is to furnish the governing officers of a city or town with a character of information which requires skilled persons to furnish, a class of information which only skilled persons can furnish, and upon which the officers having power to make improvements may safely rely.

Any estimate sufficient to inform and satisfy such officers as to what the character and quality of the improvements will be after completed. and what they will cost, such estimate. if approved by such officers, and filed as required, is. in the absence of fraud, sufficient under the law.

3. **Same—Adoption of Revised Estimate—Validity of Assessments Unaffected.**

It appears from the record that, upon the approval and filing of the preliminary estimate. the required resolution declaring the necessity for improvements was made and notice thereof published as required by law, that after the expiration of time for filing protests by property owners, the trustees advertised for bids and no bids were received, whereupon by resolution the board of trustees instructed the engineer in question to prepare and present a revised estimate, pursuant to which revised plans and estimated costs were prepared by the engineer, and after approval thereof and proper publication it was again advertised for bids upon the revised estimate, and bids were submitted and contract let for the paving upon the bid which was approved. And this is the basis of the contention, viz.: That the contract for the paving in question was let upon a bid submitted upon the approved estimate, and that for this reason the assessments were invalid. Held, this did not invalidate the assessment.

The estimate required by section 615, R. L. 1910 (sec. 4590, C. S. 1921), is by section 622, R. L. 1910 (now 4597, C. S. 1921), designated as merely a preliminary estimate and is not binding nor final to the extent of strictly confining the contract for improvements to the preliminary estimate.

4. **Same—Irregularities in Procedure—Distinctive Jurisdiction of Municipal Authorities and Courts.**

The statutes confer exclusive jurisdiction in such matters upon the governing boards of cities and towns. In such matters their duties are legislative, and the courts have no express authority to interfere nor to divest such boards of jurisdiction over such matters, and have no implied authority even, further than merely to adjudge and point out such irregularities and invalidities as may exist in a given proceeding, so that same may be corrected, by such governing boards. by a new assessment and levy, but the jurisdiction over the subject still remains in the governing board.

5. **Same—Limitation of Actions to Test Validity of Paving Assessments.**

Section 644, R. L. 1910 (now sec. 4619, C. S. 1921), provides that no suit shall be sustained to set aside any assessment or to enjoin the making of any improvement, or the levying or collecting of any assessment, unless such suit shall be commenced not more than 60 days after the passage of the ordinance making a final assessment.

Hence, after the expiration of 60 days after the date of final assessment, and after the paving has been completed and used for a period of two years, no proceedings to set aside an assessment will be sustained.

Error from District Court, Tulsa County; Edwin R. McNeill, Judge.

Action by J. M. Bocox and others against the Town of Bixby and others. Judgment for defendants, and plaintiffs bring error. Affirmed.

Crump & Seanvell, for plaintiffs in error.

Randolph, Haver & Shirk, Woodward & Westhafer, and H. M. Gray, for defendants in error.

HARRISON, J.   This was a proceeding to

enjoin the collection of certain paving assessments levied by the town of Bixby, through its board of trustees. The legality of the assessment was attacked upon two grounds: (1) Because the statute, chapter 176, S. L. 1919, under which the paving in question was done, is unconstitutional. (2) If such statute is valid, then the paving in question was not done, nor the assessments levied, in compliance with said statutes, and were illegal. The trial court sustained the constitutionality of the statutes in question, and held that the paving had been done, and the assessments levied, in compliance with such statutes, and denied the petition for injunction. The plaintiffs have appealed upon six propositions.

First: That said chapter 176. S. L. 1919, is unconstitutional. Sundry provisions of the Constitution are claimed to have been violated by said act. The title of said act is as follows:

"An act providing for the establishing and changing of the grade of any street, avenue, land, alley or other public place in any incorporated town in the state of Oklahoma, having a population of more than 1,000, as shown by the last federal census, or any special census taken for that purpose, and for permanently improving the same by paving, macadamizing, curbing, guttering and draining the same, including the installation of manholes, sewers, and catch-basins; providing for paying for said improvements, and declaring an emergency."

Section 1 of said act, now section 4626, C. S. 1921, provides that all the provisions of and all powers conferred by article 12, chapter 10, R. L. 1910, now article 12, chapter 29, C. S. 1921, are conferred upon and may be used by incorporated towns of the state having a population of more than 1,000, in the improvement of streets and alleys, including the paving of same. Section 2 of said act provides that the authority conferred by section 1 may be exercised under and upon compliance with the provisions of said article 12, chap. 10, now article 12, chap. 29, C. S. 1921. Section 3 of the act is the emergency clause; the act containing but three sections.

This act was held valid by this court in Town of Haskell v. Edmonds, 90 Okla. 44, 215 Pac. 629, and specifically held to be not violative of section 57, art. 5, of the Constitution, which, among other things, provides:

"Every act of the Legislature shall embrace but one subject, which shall be clearly expressed in its title, except general appropriation bills, general revenue bills, and bills adopting a code, digest, or revision of statutes; and no law shall be revived, amended, or the provisions thereof extended or conferred, by reference to its title only."

In Edmonds v. Town of Haskell, Case No. 15937, which was a second appeal involving the same subject-matter involved in Haskell v. Edmonds, supra, opinion rendered March 30, 1926, we followed Haskell v. Edmonds, supra, saying:

"We still concur in such conclusion, that said chapter 176 is not violative of section 57, art. 5 of the Constitution, for the reasons given in the former opinion, and for the further reasons that the only express limitation in such provision is that no law shall be extended, etc., by reference to its title only, that is, by only referring to its title. The limitation goes no further than merely to prohibit the extension, etc., of a statute by reference to its title only, that is, by reference only to its title: The act in question makes no reference whatever to the title of the act which it puts in force. It is clear, from both the title and the provisions of said chapter 176, that the Legislature did not intend nor attempt to extend the provisions of article 12, chap. 10, R. L. 1910 (now art 12, chap. 29, C. S. 1921), by reference to its title only and does not refer to the title at all. Said article 12, chap. 10, supra, was a part of chapter 10 of the Act of 1907-8, as amended by chapter 7, S. L. 1909, and chapter 176, S. L. 1919, makes no reference whatever to the title of said Act of 1907-8, nor to the title of the Act of 1909, hence it cannot be said to have given towns of more than 1,000 inhabitants the privileges of said act, which are now article 12, chap. 29, C. S. 1921, by reference merely to the title of said Act of 1907-8. Said chapter 176 is an act original and complete in itself. The Legislature had a definite purpose in view, viz., the purpose of supplementing said article 12, chap. 10, by giving to towns of more than 1,000 inhabitants the privilege, when they chose to avail themselves of it, of paving their streets. The title of the act clearly discloses such purpose and the provisions of sections 1 and 2 thereof show clearly just how such purpose may be carried out, just how such towns may avail themselves of the privilege this conferred. The title of the act is sufficiently explicit to give full notice as to just what the Legislature intended to do, and the provisions of the act are equally clear as to just how such intentions may be put in force, just how the inhabitants of such towns may avail themselves of the privileges thus conferred. There is no confusion nor ambiguity, nothing misleading, in either the title or the provisions of the act, no reason why any one should be misled as to the intent of the Legislature, nor as to the privilege which the Legislature conferred by the act. The provisions of the act, constru-

ed in the light of its title, are not only free of repugnancy to the constitutional provision in question, but constitute a clearly substantial compliance therewith. Besides, it is a rightful subject of legislation. There is no reason, at least it is not for the courts to say there is a reason, why towns of more than 1,000 inhabitants shall not have authority to pave their streets, if they desire to do so, and the act in question merely gives them such authority."

Hence we consider the question as to whether or not said chapter 176 is violative of said section 57, art. 5, as settled.

Neither is said chapter 176 violative of section 1, art. 18, of the Constitution, which provides that:

"Municipal corporations shall not be created by special laws"

—nor of section 6, art. 5, which provides that:

"The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law * * *"

—nor violative of section 59, art 5, which provides that:

"Laws of a general nature shall have a uniform operation throughout the state, and where a general law can be made applicable no special law shall be enacted."

Said chapter 176 does not violate any of the foregoing constitutional provisions, for the reason that said section 1, art. 18, expressly provides that:

"The Legislature by general laws shall provide for the incorporation and organization of cities and towns and the classification of same in porportion to p ipulation. * * *"

The act in question is no more, and cannot fairly be said to be more, than a reasonable and fair classification of towns in, proportion to their population and a grant of the same privileges and authority to all towns of the same class, and section 7, art. 10, of the Constitution expressly provides that:

"The Legislature may authorize county and municipal corporations to levy and collect assessments for local improvements upon property benefited thereby, homesteads included, without regard to cash valuation."

The two foregoing constitutional provisions, viz., section 1, art. 18, and section 7, art. 10, expressly authorize the Legislature to do the very things which it has done in said chapter 176.

The contention that said chapter 176 is violative of section 26, art. 10, which is a limitation upon the power of cities, towns, etc., in incurring indebtedness, for revenue, by taxation for governmental purposes, and violative of section 7, art. 2, which provides that:

"No person shall be deprived of life, liberty or property without due process of law"

—and violative of the 5th Amendment to the Constitution of the United States, which provides that:

"No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury, except in cases arising in the land or naval forces, or in the militia, when in actual service in time of war or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation"

—and violative of the 14th Amendment to the Constitution of the United States, which provides that:

"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws"

—cannot be sustained for the reason that the provisions of said section 26, art. 10, and section 7, art. 2, of the Constitution of Oklahoma, and of the 5th and 14th Amendments to the Constitution of the United States, go to the validity of the provisions of law which were extended by chapter 176, and not to the validity of the act which extended them. The provisions of law extended by said chapter 176 are those of article 12, chap. 10, R. L. 1910 (now article 12, chap. 29, C. S. 1921), which are a part of chapter 10 of the Act of 1907-8, as amended by chapter 7 of the Act of 1909, and have been construed and held valid in numerous cases decided by this court. See cases cited under various sections in article 12, chap. 29, C. S. 1921. The provisions of said acts were so construed in cause No. 15937, supra, and are herein so construed.

The second proposition is:

"If said law is sustained as being constitutional, the admitted record of the proceedings attempted to be pursued thereunder

discloses a lack of jurisdiction and renders the levy void."

In answer to this proposition, one section of the statute which said chapter 176 put in force in towns having a population of more than 1,000 was section 615, R. L. 1910, and is now section 4590, C. S. 1921, and which provides:

"When the mayor and council shall deem it necessary to grade, pave, macadamize, gutter, curb, drain, or otherwise improve any street, avenue, alley or land or any part thereof, within the limits of the city, they shall require the city engineer to prepare complete and accurate specifications and estimates, and upon approval thereof by the mayor and council, he shall file the same with the city clerk, whereupon said mayor and council shall, by resolution, declare such work or improvement necessary to be done. * * *"

It will be observed that the authority (jurisdiction) to order street improvements is conferred upon the mayor and city council, or other governing boards, as in towns included in said chapter 176, and that they may exercise such jurisdiction upon their own motion when they deem it necessary. This jurisdiction over the subject-matter in general is expressly conferred by said section upon the governing boards of cities and towns, and jurisdiction to order a particular improvement, as the paving of streets, is acquired by having specifications and estimates made, approved, and filed, and by passing a resolution declaring a necessity for such improvement and by publishing such resolution as required by said statute. These are the necessary initial steps, and when taken in compliance with said section, then the governing board has acquired jurisdiction over the particular improvement in view, and it appears from the record that these initial steps were taken, in compliance with the statutes, and the trial court so found from the evidence, hence the contention that jurisdiction was lacking cannot be sustained.

It appears, however, that the town of Bixby had no official resident engineer, and that the board employed a nonresident engineer to make the required estimates. It is contended by plaintiffs in error that such fact deprived the board of trustees of jurisdiction and rendered the proceedings void. This identical question was passed upon in cause No. 15937, supra, and held:

"The fact that a town may have no official resident engineer, and may employ a nonresident engineer to make the estimate required to be made by section 615, R. L. 1910 (now section 4590, C. S. 1921), does

not of itself, in the absence of fraud, invalidate the assessments.

"The jurisdictional feature of the statutory requirement for an estimate does not consist in the official character of the engineer who makes the estimate, but the purpose of such requirement is to furnish the governing officers of a city or town with a character of information which requires skilled persons to furnish, a class of information which only skilled persons can furnish, and upon which the officers, having power to make improvements, may safely rely.

"Any estimate sufficient to inform and satisfy such officers as to what the character and quality of the improvements will be, after completed, and what they will cost. such estimate, if approved by such officers, and filed as required, is, in the absence of fraud, sufficient under the law."

We still so hold, and the contention of plaintiff in error in this regard cannot be sustained.

In City of Abilene v. Lambing (Kan.) 96 Pac. 838, the identical question is passed upon; also in State v. Ray (Ind.) 54 N. E. 1067, wherein it was held that such an engineer was either a de facto or de jure officer, and in either event liability could not be avoided by reason of the fact that he was a nonresident. Also City of Huntsville v. Mayes (Tex. Civ. App.) 271 S. W. 162, wherein the identical question presented here was involved, and the court held that such fact did not invalidate the assessment. Also in Pitser v. City of Pawnee, 47 Okla. 559, 149 Pac. 201, and Perkins v. City of Pawhuska, 106 Okla. 5, 232 Pac. 937, wherein the engineering work was done by nonresident engineers, the assessments were sustained.

Third proposition:

"If jurisdiction to make the improvements was properly acquired, the record discloses that it was exceeded and lost by reason of letting the contract for a sum in excess of the estimate."

This proposition is based upon, or at least plaintiffs in error have included within this proposition the question whether the board of trustees were bound by the first or preliminary estimate made. It appears from the record that upon the approval and filing of the preliminary estimate, the required resolution declaring the necessity for improvements was made and notice thereof published as required by law, and after the expiration of time for filing protests by property owners, the trustees advertised for bids and no bids were received, whereupon by resolution, the board of trustees instructed the engineer in question to prepare and present a

revised estimate, pursuant to which revised plans and estimated costs were prepared by the engineer, and after approval thereof and proper publication it was again advertised for bids upon the revised estimate, and bids were submitted and contract let for the paving, upon which the bid was approved. And this is the basis of the contention, viz.: That the contract for the paving in question was let upon a bid submitted upon the amended estimate, and that for this reason the assessments were invalid.

By reading section 615, R. L. 1910 (sec. 4590, C. S. 1921), in connection with section 622, R. L. 1910 (now 4597, C. S. 1921), it will be seen that the estimate required in section 615 is merely preliminary and not binding nor final to the extent of confining the contract for the improvements to the preliminary estimate.

In Pitser v. City of Pawnee, 47 Okla. 559, 149 Pac. 201, it was held:   ,

"The estimates and specifications furnished by the engineer were not the final plans and estimates, and the approval thereof did not bind the defendants to adhere strictly to them, as final plans and estimates are required to be furnished after opportunity for objections by the property owners and after the council have determined to proceed with the work."

In Newman v. City of Okmulgee, 84 Okla. 147, 202 Pac. 1006, it was held:

"It would appear from a reading of the case and from the statute that in adopting the final plans and specifications it is not necessary to adhere strictly to the preliminary plans and specifications, but they should be adhered to as nearly as practicable."

In Perkins v. City of Pawhuska, 106 Okla. 5, 232 Pac. 937, it was held:

"The specifications and estimates required by Comp. Stat. 1921, section 4590, are by section 4597 referred to and denominated as 'preliminary specifications and estimates.' That this denomination is accurate and designedly used is shown by the fact that it is only in the determining resolution, after jurisdiction has been acquired, that the city is authorized to act in 'defining the extent, character, and width of the improvement, stating the material to be used, the manner of construction, and such other matters as shall be necessary to instruct the engineer in the performance of his duties in preparing for such improvement the necessary plans, plats, profiles, specifications, and estimates,' etc.

"If plaintiff's contention is correct that the preliminary specifications and estimates are binding, then the Legislature stultified itself by enacting section 4597. If the city is bound by the details of the preliminary specifications and estimates, it is futile and ineffectual to say that it shall thereafter define the extent, character, and width of improvement, state the material to be used, the manner of construction, etc."

In view of the statutes above and the above decisions upon the identical question, the contention of plaintiffs in error in this regard cannot be sustained.

In further answer to the contention that the board of trustees lost jurisdiction, or were divested of jurisdiction over the improvements in question, by reason of having another estimate made and of readvertising for bids, it may be said that the statutes confer exclusive jurisdiction in such matters upon the governing boards of cities and towns; in such matters their duties are legislative (see M., K. & T. Ry. Co. v. City of Tulsa, 113 Okla. 21, 238 Pac. 452, and authorities therein cited), and the courts have no express authority to interfere or to divest such boards of jurisdiction over such matters, and have no implied authority even, further than merely to adjudge and point out such irregularities and invalidities as may exist in a given proceeding, so that same may be corrected, by such governing boards, by a new assessment and levy, but the jurisdiction over the subject still remains in the governing board.

Fourth proposition:

"That the court erred in permitting the bondholders to be made parties defendant and erred in requiring plaintiffs to give an injunction bond"

—is without merit; the bondholders, though not necessary parties to the issues herein presented, were parties directly interested in the collection of assessments, and their being made parties could not have prejudiced, and did not in any wise prejudice, the substantial rights of plaintiffs. As to the requiring an injunction bond in the case, it was a matter within the trial court's discretion to do so if he deemed it necessary, and there was no error in this regard.

The fifth proposition is disposed of under the first proposition herein discussed.

The sixth proposition goes to the correctness of the court's ruling in sustaining the regularity and validity of the proceedings.

The record discloses as nearly strict a conformity with all requisites of statute as would be practicable for a board to do. The trial court examined these proceedings and, under the evidence, held them to be

valid, and, in our opinion, the record fully sustains his findings and conclusions.

Likewise the court was correct in holding this action barred by statute. Section 644, R. L. 1910, expressly provides that no suit shall be sustained to set aside any assessment or enjoin the making of any improvement or collection of any such assessment or installment or interest unless brought within 60 days after the passage of the ordinance making such final assessment. It appears from the record that the final ordinance was passed in August, 1920, and the suit not instituted until October, 1922, more than two years after the passage of the final ordinance. The provisions of the foregoing section have been construed by this court and held to mean what they say in numerous cases, viz.: Bickel v. Asphalt Co., 70 Okla. 138, 174 Pac. 537; Grier v. Kramer, 62 Okla. 151, 162 Pac. 490; Orr v. City of Cushing, 66 Okla. 153, 168 Pac. 223; Hancock v. City of Muskogee, 66 Okla. 195, 168 Pac. 445; Woodward v. City of Tulsa, 81 Okla. 58, 196 Pac. 683; Crosslin v. Asphalt Co., 71 Okla. 286, 177 Pac. 376; Warner-Quinlan Asphalt Co. v. Smith, 68 Okla. 263, 174 Pac. 516; City of Chickasha v. O'Brien, 58 Okla. 46, 159 Pac. 282; Oliver v. Pickett, 79 Okla. 315, 193 Pac. 526; City of Muskogee v. Burford, 77 Okla. 174, 186 Pac. 949; and James v. City of Sapulpa, 90 Okla. 108, 217 Pac. 382.

Therefore the court was correct in holding the action barred.

We have discussed the other questions presented, not because we thought plaintiffs in error had a legal right to have them passed upon, but because of their public nature and the interest which the public may have in such questions.

The judgment is affirmed.

NICHOLSON, C. J., and BRANSON, PHELPS, LESTER, CLARK, and RILEY, JJ., concur. HUNT, J., disqualified and not participating.